[No. G030673. Fourth Dist., Div. Three. Dec. 24, 2002.]

DVI, INC., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
DALE PAPWORTH, Real Party in Interest.

[No. G030770. Fourth Dist., Div. Three. Dec. 24, 2002.]

DVI, INC., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
MEDCAP CREDIT CO., LLC, Real Party in Interest.

[No. G030772. Fourth Dist., Div. Three. Dec. 24, 2002.]

MATTHEW COLASANTI, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
MEDCAP CREDIT CO., LLC, Real Party in Interest.

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, Finley L. Taylor and Matthew J. Erwin for Petitioners.

No appearance for Respondent.

Saxon, Barry, Gardner & Kincannon, Jeffrey B. Gardner, Laura J. Petrie and Michael H. Chang for Real Parties in Interest.

**OPINION**

**FYBEL, J.**—This opinion resolves three consolidated writ petitions. In case No. G030673, petitioner DVI, Inc. (DVI) challenges an order denying its motion to quash service of summons on the cross-complaint of Dale Papworth. In case No. G030770, DVI challenges an order denying its motion to quash service of summons on the third amended complaint of MedCap Credit Co., LLC (MedCap). In case No. G030772, petitioner Matthew Colasanti challenges an order denying his motion to quash service of summons on MedCap's third amended cross-complaint. DVI and Colasanti assert lack of minimum contacts necessary to create personal jurisdiction in California.

In granting DVI's writ petitions, we address the circumstances under which a parent holding company is subject to personal jurisdiction in California based upon the contacts of its wholly owned subsidiary. DVI is a holding company and is the parent of defendant DVI Business Credit, Inc. (DVIBC). DVI itself does no business and owns no property in California. DVIBC does business in California and does not contest personal jurisdiction here.

We agree with the analysis of *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540 [99 Cal.Rptr.2d 824] (*Sonora*) and hold a parent company's ownership or control of a subsidiary corporation does not, without more, subject the parent corporation to the jurisdiction of the state where the subsidiary does business. A parent holding company may be subject to general jurisdiction only under limited circumstances. Those circumstances permitting the exercise of general jurisdiction include an alter ego relationship or the parent's exercise of such a degree of control of the subsidiary as to "reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." (*Id.* at p. 542; see also *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal.App.4th 228, 244 [121 Cal.Rptr.2d 1].)

Real parties in interest MedCap and Papworth failed to meet their burden of establishing general jurisdiction over DVI in California. We also conclude specific jurisdiction does not exist over DVI and therefore grant DVI's petitions for writ of mandamus.

We conclude neither general nor specific jurisdiction exists over Matthew Colasanti, a New York resident, and therefore grant his petition for writ of mandamus.

## ALLEGATIONS AND JURISDICTIONAL FACTS

DVI is incorporated in Delaware and has its headquarters in Pennsylvania. DVI, a holding company, is the parent of defendant DVIBC, which is incorporated in Delaware and does business in California. DVIBC does not contest jurisdiction in California.

Colasanti is a resident of New York State and has lived there for the past · 32 years. Since October 1998, he has worked as a consultant for DVI.

MedCap is a limited liability company incorporated in Oregon. Papworth, who was the owner and president of MedCap, is a resident of Oregon.

In 1998, MedCap and DVIBC entered into a loan and security agreement and two amendments (the Agreement), whereby DVIBC agreed to provide a

line of credit to MedCap to permit it to enter into servicing agreements with health care providers and purchase their accounts receivable. Under the Agreement, DVIBC agreed to make advances to MedCap in an aggregate maximum of $30 million (later increased to $40 million) to purchase the receivables. MedCap agreed to pay DVIBC an origination fee. The Agreement required MedCap to provide DVIBC with certain information before entering into purchases of $1 million or more, and gave DVIBC 10 days to review the information and approve or reject the proposed purchase. If DVIBC did not respond within the 10-day period, the transaction would be deemed approved.

MedCap sued DVIBC for breach of the Agreement, interference with contractual relations, intentional and negligent misrepresentation, and negligence. MedCap alleged DVIBC referred a customer to MedCap without informing it the customer was in default of payments owed to DVIBC on medical equipment leases. MedCap also alleged DVIBC breached the Agreement by (1) refusing to approve a servicing agreement between MedCap and Help at Home, Inc., (2) refusing to approve an agreement to purchase receivables from United Home Health Care, Inc., even though the amount of the transaction was less than $1 million, (3) rescinding approval of a transaction between MedCap and IntegriCare, Inc., and (4) "reject[ing] almost every proposal submitted by [MedCap] to enter into a Sale and Servicing Agreement with potential clients."

MedCap was given leave to file a third amended complaint naming DVI, one of its officers, and Colasanti as defendants. The third amended complaint alleged those three tortiously induced DVIBC to breach the Agreement.

DVIBC cross-complained against MedCap and Papworth. Papworth cross-complained against DVI and two of its officers—Steven Garfinkel and Michael O'Hanlon. Papworth's cross-complaint alleges Garfinkel and O'Hanlon, both Pennsylvania residents, made telephone calls to Lorna Gleason, a Minnesota resident and the managing director of GMAC-RFC, regarding Papworth. GMAC-RFC and Papworth had entered into an employment agreement whereby GMAC-RFC agreed to employ Papworth as a managing director. This employment agreement is unrelated to the Agreement at issue in the third amended complaint.

Papworth's cross-complaint alleged Garfinkel called Gleason the day after the employment agreement was signed and left a message on her answering machine that " 'there is a rumor in the market place that you are entering into an agreement with a guy named Dale Papworth. . . . He used to be a client

of ours and then was affiliated with Foothill. If this is true, you and I should kind of have a general conversation.' " Papworth's cross-complaint alleged that two days later O'Hanlon called Gleason and made disparaging remarks about Papworth. As a result of these two telephone calls, Papworth alleged, GMAC-RFC amended the employment agreement with terms less favorable to Papworth.

DVI moved to quash service of summons of Papworth's cross-complaint on the ground of lack of personal jurisdiction. After a hearing, the trial court ruled it had jurisdiction over DVI and denied DVI's motion. DVI filed a petition for writ of mandamus (the First DVI Writ Petition) challenging the order denying that motion to quash service of summons.

DVI later moved to quash service of summons on MedCap's third amended complaint on the ground of lack of personal jurisdiction. After a hearing, the trial court ruled it had jurisdiction over DVI and denied DVI's motion to quash service of summons on MedCap's third amended complaint. DVI filed a petition for writ of mandamus (the Second DVI Writ Petition) challenging the order denying that motion to quash.

Colasanti also moved to quash service of summons on MedCap's third amended complaint on the ground of lack of personal jurisdiction. After a hearing, the trial court ruled it had jurisdiction over Colasanti and denied his motion. Colasanti filed a petition for writ of mandamus (the Colasanti Writ Petition) challenging the order denying his motion to quash service of summons.

The First DVI Writ Petition, the Second DVI Writ Petition, and the Colasanti Writ Petition were consolidated. MedCap and Papworth submitted a joint opposition to all three writ petitions, and DVI and Colasanti submitted a joint response to the opposition.

### JURISDICTIONAL REQUIREMENTS

■ California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) The statute "manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations." (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

■ The federal Constitution permits a state to exercise jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts"

with the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057].) "The 'substantial connection,' [citations] between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* [Citations.]" (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 112 [107 S.Ct. 1026, 1032, 94 L.Ed.2d 92].)

Personal jurisdiction may be either general or specific. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*).) A nonresident defendant is subject to the forum's general jurisdiction where the defendant's contacts are " 'substantial . . . continuous and systematic.' " (*Ibid.,* quoting *Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445, 446 [72 S.Ct. 413, 418, 96 L.Ed. 485].) In that situation, the cause of action need not be related to the defendant's contacts. (*Vons, supra,* 14 Cal.4th at p. 445; *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) "Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." (*Vons, supra,* 14 Cal.4th at p. 446.)

If the nonresident defendant does not have substantial and systematic contacts with the forum state, the defendant may be subject to specific jurisdiction if (1) " 'the defendant has purposefully availed [itself] of forum benefits' " with respect to the matter in controversy, (2) " 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum," ' " and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 [127 Cal.Rptr.2d 329, 58 P.3d 2]; *Vons, supra,* 14 Cal.4th at pp. 446, 447; see also *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472, 476 [105 S.Ct. 2174, 2181-2182, 2184, 85 L.Ed.2d 528].)

BURDEN OF PROOF AND STANDARD OF REVIEW

■ When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of proof by a preponderance of the evidence to demonstrate the defendant has sufficient minimum contacts with the forum state to justify jurisdiction. (*Vons, supra,* 14 Cal.4th at p. 449; *Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221, 228 [29 Cal.Rptr.2d 281]; *Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703, 710 [215 Cal.Rptr. 442].) The plaintiff must "present facts demonstrating that the conduct of

defendants related to the pleaded causes is such as to constitute constitutionally cognizable 'minimum contacts.' [Citation.]" (*Mihlon v. Superior Court, supra,* 169 Cal.App.3d at p. 710.) An unverified complaint has no evidentiary value in meeting the plaintiff's burden of proving minimum contacts. (*Ibid.*) The appellate court generally may not consider evidence not before the trial court. (*Ibid.*)

█ When the evidence of jurisdictional facts is not in dispute, whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review. (*Vons, supra,* 14 Cal.4th at p. 449.) When evidence of jurisdiction is in dispute, the trial court's determination of factual issues is reviewed for substantial evidence. (*Ibid.*; see also *Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 533 [257 Cal.Rptr. 278].)

DISCUSSION

I.

DVI'S WRIT PETITIONS

A. *General Jurisdiction over DVI*

█ DVI's writ petitions assert MedCap and Papworth failed to establish general jurisdiction over DVI in California. In analyzing general jurisdiction, we examine whether DVI has substantial, continuous, and systematic contacts with California. (*Vons, supra,* 14 Cal.4th at p. 445.) We conclude DVI does not.

1. *Evidence Regarding DVI's Contacts in California*

As to California's exercise of personal jurisdiction over DVI, the trial court had before it two pieces of evidence: (1) the declaration of Melvin C. Breaux, DVI's secretary, general counsel, and vice-president (submitted by DVI in support of its motions to quash); and (2) DVI's consolidated form 10-K for the fiscal year ended June 30, 2001 (submitted by MedCap in opposition to DVI's motion to quash service on its third amended complaint).[1]

According to Breaux, DVI's principal activity is as a holding company. DVI owns the stock of six subsidiaries, including DVIBC. Although the

---

[1]The trial court did not have the form 10-K when it denied DVI's motion to quash service on Papworth's cross-complaint. MedCap later submitted the form 10-K in opposing DVI's motion to quash service on the third amended complaint. We nonetheless will consider the form 10-K as having been submitted by both MedCap and Papworth in opposition to DVI's motions to quash.

subsidiaries regularly conduct business in California and advertise under the DVI name, DVI itself does not engage in the subsidiaries' business activities. DVI is registered to do business in California as Delaware DVI, Inc., but engages in no business with California residents or businesses.

Breaux declared: (1) DVI has no employees; (2) DVI has eight domestic officers, two of whom reside in California; (3) DVI does not maintain a retirement, pension, medical, health, or dental plan; (4) DVI, unlike its subsidiaries, does not finance equipment leases or provide lines of credit; (5) DVI has no customers at all—not in California or elsewhere; (6) DVI sells no products or services in California; (7) DVI does not pay income taxes in California; (8) DVI maintains no bank accounts or deposit accounts in California; and (9) DVI owns no real or personal property in California.

DVI's form 10-K confirms DVI is incorporated in Delaware and has its principal place of business in Pennsylvania. The form 10-K is a consolidated statement for DVI and all of its subsidiaries, including DVIBC. The form 10-K states, "DVI conducts its business principally through two operating subsidiaries, DVI Financial Services Inc., referred to as 'DVI Financial Services' and DVI Business Credit Corporation, referred to as 'DVI Business Credit.'"

2. *Exercise of General Jurisdiction over a Parent Corporation Based upon the Subsidiary's Contacts—the Sonora Case*

█ In analyzing the evidence of contacts, "[w]e start with the firm proposition that neither ownership nor control of a subsidiary corporation by a foreign parent corporation, *without more*, subjects the parent to the jurisdiction of the state where the subsidiary does business." (*Sonora, supra*, 83 Cal.App.4th at p. 540, italics added; see also *Cannon Mfg. Co. v. Cudahy Packing Co.* (1925) 267 U.S. 333, 336 [45 S.Ct. 250, 251, 69 L.Ed. 634].)

█ The "more" necessary for jurisdiction over the parent can be contacts creating specific jurisdiction. In *Empire Steel Corp. v. Superior Court* (1961) 56 Cal.2d 823, 832 [17 Cal.Rptr. 150, 366 P.2d 502], the California Supreme Court held a foreign corporation could be subject to jurisdiction in California where the claims asserted arise out of a parent's manipulation of the subsidiary. The court concluded a foreign parent was subject to jurisdiction in California because it "knowingly caused its California subsidiary to make the contracts in suit" and therefore "engaged in activities creating substantial contacts within California in relation to the claim asserted." (*Id.* at p. 832.) Such contacts give rise to what is today called specific jurisdiction. The *Empire Steel* court did not address the circumstances under which

the parent would be subject to *general* jurisdiction in California based upon its subsidiaries' contacts.

In *Sonora, supra,* 83 Cal.App.4th 523, the court discussed at length those circumstances—the "more" needed to subject a parent corporation to general jurisdiction based upon the contacts of the subsidiary. There were two defendants in *Sonora*. The first was Sonora Mining Corp., a Nevada corporation. (*Id.* at p. 530.) It did extensive business in California and did not contest jurisdiction. The second was Sonora Diamond Corp., a Canadian corporation. (*Id.* at pp. 532-533.) Sonora Diamond's primary business was ownership of Sonora Mining's stock. Sonora Diamond prepared consolidated financial reports for itself and its subsidiaries, including Sonora Mining, guaranteed Sonora Mining's obligations, and made significant unsecured (and not repaid) loans to it. (*Id.* at p. 533.) The trial court denied Sonora Diamond's motion to quash. (*Id.* at p. 530.) The Court of Appeal concluded Sonora Diamond lacked sufficient minimum contacts with California and issued a writ of mandate. (*Id.* at p. 555.)

The *Sonora* court identified three circumstances in which general jurisdiction may exist over the parent corporation based upon its subsidiaries' contacts with the forum. First, general jurisdiction may exist when evidence establishes the parent and the subsidiary are alter egos. (*Sonora, supra,* 83 Cal.App.4th at p. 538.) The party asserting alter ego liability must establish (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist" and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." (*Ibid.*) The court concluded the plaintiff failed to establish wrongdoing or an unfair result. (*Id.* at p. 539.)

Second, the *Sonora* court explained the " 'representative services' " doctrine (a species of agency) "supports the exercise of jurisdiction when the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's *own* business." (*Sonora, supra,* 83 Cal.App.4th at p. 543.) But the court concluded the representative services theory is inapplicable to a holding company because "[t]o find the holding company subject to jurisdiction simply because the holding company chose to invest rather than operate would swallow the distinction, made in the case law . . . between holding companies and operating companies . . . ." (*Id.* at p. 545.)

Third, the *Sonora* court recognized "[a]gency may confer general jurisdiction in the forum state over a foreign corporation," but only where "the

nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities . . . ." (*Sonora, supra*, 83 Cal.App.4th at pp. 540-541.) The nature of the parent's control over the subsidiary must "be over and above that to be expected as an incident of the parent's ownership of the subsidiary," but must "reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." (*Id.* at p. 542.) "Accordingly, if a parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through which the parent acts, or nothing more than an incorporated department of the parent, the subsidiary will be deemed to be the agent of the parent in the forum state and jurisdiction will extend to the parent." (*Id.* at p. 541; see also *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc., supra*, 99 Cal.App.4th at pp. 244-245.)

### 3. *Application of Sonora—No General Jurisdiction over DVI*

█ We agree with *Sonora* and adopt its reasoning and holding. We conclude MedCap and Papworth have failed to establish any of the elements creating general jurisdiction over DVI, the parent corporation of DVIBC.

First, MedCap and Papworth have not shown alter ego, and their allegations of alter ego alone are insufficient to create jurisdiction over DVI. (*Sonora, supra*, 83 Cal.App.4th at p. 540.)

Second, the representative services doctrine does not support jurisdiction because there is no evidence DVIBC performed a function that is compatible with, and assists DVI in the pursuit of, *DVI's* business.

Third, MedCap and Papworth failed to prove an agency relationship necessary to establish jurisdiction over a holding company. They failed to produce evidence establishing DVI exercises "such a degree of control" over DVIBC that DVIBC "can legitimately be described as only a means through which [DVI] acts, or nothing more than an incorporated department of the parent . . . ." (*Sonora, supra*, 83 Cal.App.4th at p. 541.)

DVI's relationship with DVIBC was not as close as the relationship between Sonora Mining and Sonora Diamond. Sonora Mining was formed to operate Sonora Diamond's operations in California, Sonora Diamond's sole source of income was derived from Sonora Mining's California operations, Sonora Diamond guaranteed key obligations of Sonora Mining and loaned it significant sums, the two companies had interlocking officers and directors,

Sonora Diamond prepared consolidated financial reports, and Sonora Diamond was extensively involved in Sonora Mining's winding up. (*Sonora, supra*, 83 Cal.App.4th at pp. 546-550.) The court nonetheless rejected the plaintiff's argument that Sonora Mining was Sonora Diamond's agent. MedCap and Papworth presented no evidence DVIBC was formed to operate DVI's operations in California, DVI's sole source of income was DVIBC's California operations, or DVI guaranteed DVIBC's obligations or loaned DVIBC money. DVI has no employees in California—DVI has no employees at all.[2]

The consolidated financial statement does not meet MedCap's and Papworth's burdens. The form 10-K shows DVI has at least one subsidiary other than DVIBC, which tends to disprove an assertion that DVI's sole source of income was DVIBC's California operations. The fact DVI and its subsidiaries produce consolidated financial statements does not establish they are a single entity for, as the *Sonora* court stated, "[t]he cases are unanimous that consolidated reporting is standard business practice and will not support jurisdiction in the absence of evidence establishing an agency relationship." (*Sonora, supra*, 83 Cal.App.4th at p. 549.) The consolidated report's use of the words " 'we' " or " 'the Company' " to refer to DVI and its subsidiaries does not prove they are a single entity in practice. (*Id.* at p. 550.)

MedCap and Papworth argue DVI is subject to jurisdiction in California because it registered to do business, maintains an agent for service of process, and has two officers residing in the state. In *Gray Line Tours v. Reynolds Electrical & Engineering Co.* (1987) 193 Cal.App.3d 190, 193-194 [238 Cal.Rptr. 419], the court held that designation of an agent for service of process and qualification to do business in California alone are insufficient to permit general jurisdiction except for lawsuits arising out of the foreign corporation's business conducted in the state. Here, DVI conducts no business in California: DVI's business is to own the stock of DVIBC. DVIBC does business in California, but DVIBC's contacts with California are not in issue. Moreover, as explained below, the claims in Papworth's cross-complaint against DVI do not arise out of any business conducted in California.

MedCap asserts two of DVI's officers reside in California. The acts of corporate agents within the forum may establish jurisdiction over the corporation (*Magnecomp Corp. v. Athene Co., supra*, 209 Cal.App.3d at p. 535);

---

[2]MedCap asserts DVI's form 10-K shows DVI and its subsidiaries combined have 375 employees and, therefore, Breaux's declaration that DVI has no employees is false. The form 10-K is a consolidated statement, so its representation that DVI *and* its subsidiaries combined have 375 employees is not inconsistent with Breaux's statement that DVI itself has no employees.

however, MedCap has not shown how the ownership of a *personal* residence is part of an officer's activities in the capacity of a corporate agent.

MedCap and Papworth assert jurisdiction over DVI based upon Breaux's statement that "subsidiaries owned by DVI regularly do business in California and advertise under the 'DVI' name." However, the nature of the subsidiaries' advertising in this case does not create jurisdiction over DVI. In *Hesse v. Best Western Internat., Inc.* (1995) 32 Cal.App.4th 404, 410 [38 Cal.Rptr.2d 74], cited by MedCap, the defendant corporation advertised collectively for its affiliate members. Here, DVI's subsidiaries engage in their own advertising under the DVI moniker. It is natural they do so because "DVI" is common to all the subsidiaries' names.

*Circus Circus Hotels, Inc. v. Superior Court* (1981) 120 Cal.App.3d 546 [174 Cal.Rptr. 885], cited by DVI, is instructive on whether advertising in California by DVI's subsidiaries creates jurisdiction over DVI. In *Circus Circus*, the court held a Nevada casino's substantial advertising in the Los Angeles Times, which led to the plaintiff's contact with the casino, did not create general jurisdiction over the casino in California. (*Id.* at pp. 563, 567.) Although, as MedCap points out, the casino was not registered to do business in California and the tortious conduct occurred in Nevada, the basis for the *Circus Circus* decision was that the casino was not subject to general jurisdiction in California by virtue of its advertising in the state. DVI is one step removed from the casino in *Circus Circus* in that DVI's subsidiaries, not DVI, are advertising in California.[3]

MedCap and Papworth argue DVI and DVIBC have not adhered to corporate formalities, and in support rely upon a passage from the deposition transcript of Anthony Turek, an officer of DVI. Turek testified the same people serve as the directors of DVI and DVIBC, and "[w]e don't really concern [ourselves] too much with the legal subsidiary lines." Turek was not deposed, however, until after the trial court denied the motions to quash, and we may not consider evidence that was not before the trial court. (*Mihlon v. Superior Court, supra,* 169 Cal.App.3d at p. 710.)

MedCap and Papworth asserted at oral argument we have discretion to consider the Turek deposition. (See *McCarthy v. Superior Court* (1987) 191 Cal.App.3d 1023, 1030, fn. 3 [236 Cal.Rptr. 833] [in writ proceeding, reviewing court may in its discretion consider evidence not presented to trial

---

[3]In *Vons, supra,* 14 Cal.4th 434, 464, the Supreme Court rejected the proximate cause test applied by *Circus Circus Hotels, Inc. v. Superior Court, supra,* 120 Cal.App.3d 546, for analyzing specific jurisdiction. The Supreme Court did not disapprove the *Circus Circus* court's analysis of general jurisdiction.

court].) A persuasive line of authority holds that in writ of mandamus proceedings the court should decline to consider evidence not presented to the trial court. (See *People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1173 [17 Cal.Rptr.2d 815, 847 P.2d 1031] [declining to consider evidence not presented to trial court]; *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 607, fn. 13 [89 Cal.Rptr.2d 370] ["We agree that where [an] exhibit . . . was not before the trial court, we should not consider it"]; *Stevens v. Superior Court* (1997) 52 Cal.App.4th 55, 58, fn. 3 [60 Cal.Rptr.2d 397] ["Because these declarations were not before the trial court, we cannot consider them in this proceeding"]; *Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, 437 [253 Cal.Rptr. 587] ["Since none of these contentions was presented in the trial court, and the declarations and other exhibits filed in support of them were not before the superior court, we cannot consider them in this proceeding"].) If MedCap and Papworth needed to garner evidence in support of jurisdiction, they could have asked for continuances of the motions to quash service of summons to conduct discovery. (*Goehring v. Superior Court* (1998) 62 Cal.App.4th 894 [73 Cal.Rptr.2d 105].)

But even if considered, Turek's deposition testimony failed to meet MedCap's and Papworth's burdens of establishing jurisdiction. Turek's testimony did not establish alter ego or that DVI exercised "such a degree of control" over DVIBC that DVIBC can legitimately be described as only a means through which DVI acts. Indeed, the *Sonora* court recognized the relationship of parent and subsidiary "contemplates a close financial connection between parent and subsidiary and a certain degree of direction and management exercised by the former over the latter." (*Sonora, supra,* 83 Cal.App.4th at p. 541.) The *Sonora* court noted such things as interlocking corporate officers and directors are normal attributes of a parent-subsidiary relationship. (*Id.* at pp. 548-550.)

In sum, MedCap and Papworth failed to meet their burdens of submitting evidence establishing DVI's contacts with California were substantial, continuous, and systematic. MedCap and Papworth established only that DVI owns its subsidiary, DVIBC, which does business in California. Without "more," which MedCap and Papworth failed to show, DVI is not subject to general jurisdiction in California.

B. *Specific Jurisdiction over DVI*

In analyzing specific jurisdiction, we examine the nexus between DVI's contacts with California and the causes of action alleged in Papworth's cross-complaint and MedCap's third amended complaint. (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286 [100 S.Ct. 559,

580, 62 L.Ed.2d 490]; *Pavlovich v. Superior Court, supra,* 29 Cal.4th at p. 269; *Cornelison v. Chaney, supra,* 16 Cal.3d 143, 147.) We conclude DVI is not subject to specific jurisdiction in California regarding either pleading.

1. *Papworth's Cross-complaint*

The allegations of Papworth's cross-complaint have no substantial nexus with California; therefore, the cross-complaint's allegations cannot have a nexus with DVI's contacts with California sufficient to create personal jurisdiction. The gist of Papworth's cross-complaint is that two Pennsylvania residents made telephone calls to a Minnesota resident regarding an Oregon resident. Papworth presented no evidence the calls were made from or into California. (See *Cornelison v. Chaney, supra,* 16 Cal.3d at p. 148 [specific jurisdiction "depends upon the quality and nature of [the defendant's] activity in the forum in relation to the particular cause of action"].) Personal jurisdiction can be based upon tortious conduct outside of California that is expressly aimed at causing tortious effects in this state. (*Pavlovich v. Superior Court, supra,* 29 Cal.4th at pp. 269-271, 272-273.) But the telephone calls allegedly disparaged Papworth, an Oregon resident, and any injury he allegedly suffered occurred outside of California.

Papworth argues the telephone calls by the Pennsylvania residents establish specific jurisdiction in California because the calls "concerned Papworth's conduct in its business dealings with DVIBC under the contract." Papworth's own allegations do not support this argument. Papworth alleged the cross-defendants' allegedly tortious conduct "rendered *the Employment Agreement* more onerous, more one-sided, and less favorable for Papworth, and caused damages to Papworth to that extent." (Italics added.) Papworth did not allege the telephone calls were made to interfere with MedCap's contract with DVIBC.

In a similar vein, Papworth's counsel argued for the first time at oral argument the telephone calls were related to California because they were made in an attempt to interfere with or influence this litigation. The cross-complaint alleged the telephone calls were made to interfere with Papworth's employment agreement, not to interfere with this litigation. Even if the cross-complaint could be construed as alleging the calls were made to interfere with this litigation, Papworth submitted no evidence to support that theory. Further, merely asserting the defendant knew or should have known that his or her intentional acts would cause harm in the forum state is not enough to establish jurisdiction. (*Pavlovich v. Superior Court, supra,* 29 Cal.4th at pp. 270-271.) Rather, "additional evidence of express aiming or intentional targeting" is required to establish jurisdiction under the effects

test. (*Id.* at p. 273.) MedCap produced no evidence supporting this requirement.

### 2. *Third Amended Complaint*

■ MedCap's third amended complaint alleges that DVI breached the Agreement and DVIBC and DVI "took direct action which breached the contract between [MedCap] and DVIBC." But the third amended complaint does not allege DVI is a party to the Agreement and does not identify what DVI did to breach a contract to which it is not a party. The third amended complaint mentions no specific acts of wrongdoing by DVI.

MedCap argues the third amended complaint concerns DVI's own wrongdoing in that DVI instructed DVIBC to breach its contract with MedCap. MedCap presented no evidence below, however, showing DVI engaged in any acts of wrongdoing or committed any conduct within California. The meeting at which DVIBC allegedly threatened to put MedCap out of business occurred in Oregon, and was allegedly attended by "Colasanti and Greg Lacker of *DVIBC*." (Italics added.)

Liability against DVI under the third amended complaint appears to be based not upon DVI's own alleged wrongdoing, but upon theories of alter ego and agency. These theories are, in turn, based solely upon DVI's ownership and purported control of DVIBC. The third amended complaint alleges "DVI, Inc. exercised complete dominance and control over DVIBC such that DVIBC is a mere shell and instrumentality for the conduct of Defendant DVI, Inc.'s own business affairs" and "each of the Defendants named herein was an agent and employee of the remaining Defendants and was at all times herein relevant acting within the scope of said agency and employment." As we concluded above, MedCap failed to prove an agency or alter ego relationship necessary to establish jurisdiction over a parent holding company. We therefore conclude MedCap has failed to meet its burden of establishing specific jurisdiction over DVI.

## II.

### COLASANTI'S WRIT PETITION

### A. *General Jurisdiction over Colasanti*

■ We conclude MedCap failed to meet its burden of demonstrating Colasanti, a New York resident, has substantial, continuous, and systematic contacts with California sufficient to create general jurisdiction. (*Vons, supra,* 14 Cal.4th at p. 445.)

As to California's exercise of personal jurisdiction over Colasanti, the trial court had before it three pieces of evidence: (1) Colasanti's declaration submitted in support of his motion to quash; (2) Papworth's declaration submitted in opposition to the motion; and (3) Jeffrey B. Gardner's declaration submitted in opposition to the motion. Gardner is one of MedCap's attorneys.

Colasanti declared he has lived in New York State for the past 32 years. He declared he has never lived in California, has never been employed in California, maintains no office in California, has never personally contracted with anybody in California, has never advertised in California, owns no real or personal property in California, has never sued or (until now) been sued in California, has never paid income taxes in California, and has never maintained a bank or other deposit account in California.

Papworth's declaration is just over a page in length. In it, Papworth declared: (1) in 1999 he met with Colasanti twice at DVIBC's offices in Newport Beach to discuss the Agreement; (2) in the spring of 1999, Colasanti twice flew into Phoenix, Arizona from California; (3) on February 17, 2000, Colasanti participated in a settlement conference with Papworth in Newport Beach; (4) Colasanti "has an office and a telephone number in Newport Beach, California" and Papworth, during his "numerous telephone conversations" with Colasanti, "reached him most frequently through his phone number in California"; (5) Colasanti's assistant works in California; (6) Colasanti "represented to [Papworth] that he is in California over 50% of the time"; and (7) a person who does business with DVIBC represented to Papworth that Colasanti "was the Chief Operating Officer of [DVIBC]." Gardner's half-page declaration mentioned only the February 17, 2000 settlement conference in Newport Beach.

The trial court did not rule on Colasanti's written objections to Papworth's declaration, so we will consider the declaration, along with Gardner's declaration, in full. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1186, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on other grounds by *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 623 [124 Cal.Rptr.2d 556].) Nonetheless, Papworth's declaration and Gardner's declaration fall short of meeting MedCap's burden of establishing general jurisdiction.

 In analyzing general jurisdiction, we examine the defendant's contacts when the alleged conduct occurred and at the time of service of summons. Several federal courts have held that in determining whether to

exercise specific jurisdiction, "courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute . . . ." (*Steel v. U.S.* (9th Cir. 1987) 813 F.2d 1545, 1549; see also *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.* (9th Cir. 1990) 907 F.2d 911, 913 [in analyzing purposeful availment, "[o]nly contacts occurring prior to the event causing the litigation may be considered"].) To determine whether to exercise general jurisdiction, it is also necessary to examine the defendant's contacts at the time the complaint was served. Exercise of general jurisdiction comports with " 'traditional notions of fair play and substantial justice' " (*Internat. Shoe Co. v. Washington, supra,* 326 U.S. at p. 316 [66 S.Ct. at p. 158]) and is " 'reasonable' and 'fair' " (*Kulko v. California Superior Court* (1978) 436 U.S. 84, 92 [98 S.Ct. 1690, 1697, 56 L.Ed.2d 132]) when the defendant has substantial, continuous, and systematic contacts with the forum at the time the complaint is served on that defendant.

■■■ Papworth's declaration did not identify when Colasanti had an office and telephone number in California, when Papworth contacted Colasanti through the California telephone number, or when Colasanti represented he spent half of his time in California. We cannot tell from Papworth's declaration whether those contacts arose either at the time of the allegedly tortious conduct or at the time Colasanti was served. Papworth's declaration described those purported contacts in cursory fashion, with insufficient information to determine whether the contacts meet due process requirements for exercise of jurisdiction.

Papworth did identify the date when Colasanti flew into Phoenix, Arizona from California, and the dates when Colasanti met Papworth in California to discuss the Agreement. But those few contacts are not substantial, continuous, or systematic. Papworth and Gardner also provided a date for Colasanti's meeting with Papworth in Newport Beach. But that settlement conference is irrelevant to establishing general jurisdiction because it occurred after the allegedly tortious conduct and before the complaint was served. (*Steel v. U.S., supra,* 813 F.2d at p. 1549.) Further, we hold, exercising general jurisdiction over a nonresident for participating in a settlement conference in the forum does not comport with " 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co. v. Washington, supra,* 326 U.S. at p. 316 [66 S.Ct. at p. 158].)

Because Papworth's declaration failed to identify when Colasanti's alleged contacts with California arose and Gardner's declaration addresses only the settlement conference, MedCap failed to meet its burden of establishing Colasanti—a New York resident—had substantial, continuous, and systematic contacts with California sufficient to establish general jurisdiction.

B. *Specific Jurisdiction over Colasanti*

 Colasanti is not subject to California's specific jurisdiction. In making this determination, we examine the nexus between Colasanti's contacts with California and the causes of action alleged in MedCap's third amended complaint. (*World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. 286; *Cornelison v. Chaney, supra,* 16 Cal.3d 143, 147.)

Colasanti argues, "MedCap does not even allege, let alone provide evidence, of a single tortious act that Colasanti committed against MedCap relating to California." True. Only one allegation of the third amended complaint identifies any conduct undertaken by Colasanti, and that allegation refers to conduct in Oregon. The third amended complaint alleges, "in or about October 1999, in a meeting at [MedCap's] office in Oregon, Colasanti and Greg Lacker of DVIBC threatened to put [MedCap] out of business. Colasanti and Lacker wrongfully attempted to shut down [MedCap's] business and take over its employees and assets."

MedCap's evidence is only a bit more illuminating than MedCap's complaint. Papworth declared: (1) he met with Colasanti twice in 1999 at DVIBC's offices in Newport Beach to discuss the Agreement; (2) in 1999, Colasanti twice flew into Arizona from California to meet with Papworth; and (3) on February 17, 2000, Colasanti participated in a settlement conference with Papworth in Newport Beach. The declaration did not explain what issues regarding the Agreement were discussed at the 1999 meetings and provided no other basis pertaining to the 1999 meetings to support specific jurisdiction over Colasanti. The declaration did not explain why Colasanti was in California before flying into Arizona in 1999. As noted above, the settlement conference occurred after the allegedly tortious conduct, and therefore it is irrelevant to establishing specific jurisdiction. (*Steel v. U.S., supra,* 813 F.2d at p. 1549.) A controversy is not " ' "related to" ' " and does not " ' " 'arise[] out of' " ' " (*Pavlovich v. Superior Court, supra,* 29 Cal.4th at p. 269) a settlement conference held to resolve that controversy. Papworth's declaration thus fails to establish the nexus between the complaint and Colasanti's California contacts sufficient to create specific jurisdiction.

DISPOSITION AND ORDER

DVI's petitions for writ of mandamus (case Nos. G030673 and G030770) are granted. Colasanti's petition for writ of mandamus (case No. G030772) is granted.

Let a writ of mandate issue directing the superior court to vacate its orders denying DVI's motions to quash service of summons and denying Colasanti's motion to quash service of summons and to enter orders granting the motions.

DVI and Colasanti shall recover their costs incurred in this proceeding.

Sills, P. J., and O'Leary, J., concurred.