Filed 9/30/22  Romero v. Superior Court CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| VILMA ROMERO,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | A162917<br><br>(Contra County<br>Super. Ct. No. 02-314827-7) |

Vilma Romero was stopped by Police Officer George Marcus for entering an intersection without sufficient space to avoid obstruction of traffic.  After Romero refused to provide her driver's license, Officer Marcus pulled her from the vehicle to the ground and arrested her.  Romero was convicted of two misdemeanors for resisting arrest.  In May 2015, the trial court sentenced Romero to two years of probation and ordered her to pay restitution as determined by further order.

The trial court held a hearing on restitution in August 2016.  Officer Marcus testified that his shoulders and neck were injured when he pulled Romero out of the vehicle because she had held onto the steering wheel, and that his subsequent application for medical retirement from duty had been

granted.  *After* his cross-examination of Officer Marcus, defense counsel requested records relating to the medical retirement application.  In July 2017—almost one year later—defense counsel filed a *Pitchess*[1] motion.  The trial court conducted an in camera review of the police department file and subsequently indicated there were no medical records and "nothing with any probative value at all."

No further evidence was presented regarding restitution.  At the final restitution hearing in June 2018, defense counsel submitted on a written memo without further argument.  The trial court ordered $3,052,158.40 in restitution to Officer Marcus for lost salary, pension reduction, and lost medical benefits.

In the instant petition for writ of mandate, Romero challenges this restitution order on the grounds that (1) the trial court lacked jurisdiction to order restitution after her term of probation had expired; (2) defense counsel provided ineffective assistance; and (3) the $3,052,158.40 restitution amount is an excessive fine that violates her constitutional rights.  We agree that Romero received ineffective assistance of counsel during the restitution proceedings and grant the petition on this basis.

## BACKGROUND

### A.  Incident

On July 2, 2013, Romero was stopped by Officer Marcus at the intersection of a freeway onramp in Richmond.  Officer Marcus had initiated the stop for violation of the Anti-Gridlock Act of 1987:  entering an intersection without sufficient space to avoid obstruction of traffic.  (Veh. Code, § 22526, subds. (a), (g).)  According to the police report, Officer Marcus had been assigned to conduct traffic enforcement in that area due to

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

complaints about congestion. When Officer Marcus saw Romero, he recognized her from writing a similar citation at the same location three weeks prior. Romero's 65-year-old mother was riding in the back seat of the car.

Romero angrily told Officer Marcus that she was late for work and had done nothing wrong; she refused to provide her driver's license, registration, or insurance. When Officer Marcus opened the driver's side door to arrest her, Romero began unbuckling her seatbelt. Officer Marcus grabbed one of Romero's hands and attempted to pull her from the vehicle while Romero held onto the steering wheel with her other hand. Officer Marcus pulled Romero from the car to the ground, "kneeling over [her] with his knee in the small of her back to control her for handcuffing." Romero's mother then exited the vehicle and moved toward Officer Marcus. Officer Marcus pushed Romero's mother with his arm, causing her to fall to the ground. Medical personnel responded to the scene; Romero's mother was deemed unresponsive and taken to the hospital. Officer Marcus reported that his left shoulder was strained from the struggle with Romero. Romero was identified as 5 feet 2 inches tall and 110 pounds at the time of the incident. According to Romero, Officer Marcus was 5 feet 11 inches tall and 210 pounds.

## B. Conviction and Sentencing

Romero was convicted of two misdemeanors for resisting arrest. (Pen. Code, §§ 69, 148, subd. (a)(1).) In May 2015, the trial court sentenced Romero to two years of court probation, a $150 restitution fine, a suspended $150 probation revocation fine, and 300 hours of community service. It also ordered Romero to make restitution "as determined by further order from the Court."

3

## C.  Restitution Proceedings

The restitution hearing was originally set for June 2015, but was continued several times until August 2016.  At the August 2016 hearing, Officer Marcus testified that both of his shoulders and his neck were injured when he pulled Romero out of the vehicle.  He then had two surgeries on his left shoulder and one on his right shoulder.  He worked on "light duty" at a desk for short periods before and in between those surgeries but was ultimately medically retired from duty.  After medical retirement, Officer Marcus was not able to obtain a job as a police officer.  Officer Marcus testified that he was "limited to motions below the shoulder," as "[a]ny type of motion over [his] shoulders is painful."  He could not throw a football or play basketball with his son, and there was "not a day that goes by that [he didn't] have pain."  Upon medical retirement, Officer Marcus received approximately half of his salary—$6,200 a month—and would continue to receive that amount for the rest of his life.

Officer Marcus was cross-examined by Defense Counsel Ernesto Castillo.  On cross-examination, Officer Marcus testified that he had previously sprained his right shoulder when he was making an arrest sometime between 1999 and 2001.  He discussed other prior injuries he sustained as a police officer, including a pulled ligament in his right thumb from "apprehending" someone, knee injuries from "being on the ground and grappling with people," a torn ligament in his right foot, and a broken left ankle.  He had two surgeries on his broken ankle.  Officer Marcus applied for medical retirement in late 2014.

Castillo then stated that he had no further questions but was requesting "any and all records relating to this officer's application for medical retirement, the basis for that, the decisions that were made,

4

anything looking into the—anything that they may have relating to his medical injuries or his injuries on the job that may reflect on not only the injuries that he's claiming are related to this, but also for us to determine exact amounts based on real numbers, and I think what we have today is just estimates." Officer Marcus was excused subject to recall. The trial court indicated that the records request "may trigger a [*Pitchess*] motion." Castillo stated that he could "probably get it done in the next week or so." In July 2017—almost one year later—Castillo filed a *Pitchess* motion. There were five continuances of the restitution hearing in the interim.

In February 2018, the trial court conducted an in camera review of the police department file and subsequently indicated there were no medical records and "nothing with any probative value at all." A hearing for argument on restitution was set for June 2018. Counsel for both parties were directed to "submit a brief stating their position on what the restitution should be."

The People sought $4,160,224.40 in restitution for Officer Marcus: $2,216,132 for lost salary over the 14 years until his full retirement date; $1,344,092.40 in pension reduction over 20 years; and $600,000 in lost medical benefits over 20 years.[2] Castillo filed a memo asserting various reasons why the restitution claim was excessive. Counsel argued that "based on the aforementioned principles of cause in fact, proximate cause, and comparative negligence, the prior injuries and medical history are highly

_____

[2] In the alternative, the People requested $4,643,064.06 based on the assumption that Officer Marcus, who was an acting sergeant at the time of his medical retirement, would have been promoted to sergeant, thus increasing the value of his lost salary and pension benefits. The trial court rejected the higher amount as "a bit more speculative than is appropriate here."

relevant to the determination of restitution" and "[n]o evidence has been presented to prove that his current injuries were caused by defendant rather than from the prior incidents, or from his own negligence as an officer."

At the June 2018 hearing, the trial court indicated that these briefs had been requested because Castillo "was not readily available due to his commitments to certain trials." Another attorney, David Reagan, appeared and submitted on the briefing. The trial court noted that "Castillo did not give any indicated amount that should be set for restitution." The court ordered $3,052,158.40 in restitution to Officer Marcus, reducing the requested amount by $1,108,066 to account for the salary he continued to receive in medical retirement.

The trial court explained: "Given everything that's been submitted to me, I, one, will indicate that it appears that there was—while there was a concern that perhaps preexisting injuries might have contributed to these injuries that were sustained, there was nothing that was discovered that would seem to indicate that the preexisting injuries were a factor, or causal factor here. [¶] Similarly, I will indicate that also in the motion—or I should say memorandum, the Court did not hear reliable testimony that the injury to the left shoulder was entirely due to his pushing the—Ms. Romero's mother out of the way. [¶] He did indicate in his testimony that—in cross-examination, he indicated that he reported an injury to his left shoulder to Sergeant Gard, I think, on the day of the incident. But I really didn't hear much testimony about that due to motions in limine that were addressed in the—during the trial." It continued: "While I would genuinely wish that there would be a different calculation, I do think the appropriate amount of restitution is set at the amount of $3,052,158.40."

6

Romero moved for reconsideration, seeking to set aside the restitution order. The motion was denied without prejudice for failure to demonstrate that the court had jurisdiction to reconsider the order. Romero filed a subsequent motion for reconsideration that was also denied.[3]

## D. Petition for Writ of Mandate

In July 2020, Romero filed a petition for writ of mandate. We summarily denied the petition for lack of jurisdiction without prejudice to refiling in the appellate division of the superior court. After the appellate division denied her refiled petition,[4] Romero followed with this petition.[5] The petition contains a declaration from Romero which states that Castillo told her he would investigate Officer Marcus's claims and obtain his medical records. Romero's declaration also states that Castillo never advised her about the effect of continuing the restitution proceedings beyond the termination of her probation, and that, after restitution was ordered, Castillo advised her there was "nothing [she] could do about it" and an appeal was

---

[3] Neither motion for reconsideration was heard by the judge who made the restitution order.

[4] We exercise our discretion pursuant to Code of Civil Procedure section 904.3 that, upon petition for extraordinary writ, we may review a judgment of the appellate division of a superior court denying a petition for writ of mandate directed to the superior court in a misdemeanor case.

[5] In her petition, Romero requests that we take judicial notice of (1) COVID-19 emergency shelter-in-place orders and closures; (2) the trial court's records in this proceeding; and (3) this court's records in this matter. We deny the request as unnecessary because the People have made no argument challenging the timeliness of the writ, and we grant Romero's request to incorporate the exhibits from her prior petition into the instant petition. (See *In re Reno* (2012) 55 Cal.4th 428, 484 [separate or specific request for judicial notice of documents connected with prior petition unnecessary because "this court routinely consults prior proceedings irrespective of a formal request"].)

"just going to waste [her] money." The petition also contains a declaration from Autumn Paine, Romero's appellate counsel, which states that Paine reviewed Castillo's case file and found it contained medical records with "information about Officer's medical history which demonstrate that there are significant questions as to Officer Marcus's credibility, not only as to his medical condition prior to interacting with Ms. Romero, but also the veracity of his claim of injury, necessity for surgery, and the necessity for medical retirement."

After briefing from the parties, we issued an order to show cause. The People filed a return,[6] and Romero filed a reply to the return.

## DISCUSSION

Romero seeks to set aside the restitution order on three grounds. First, she argues that the trial court lacked jurisdiction to order restitution in June 2018, over a year after she completed probation. Second, Romero argues that she received ineffective assistance of counsel from Castillo and was prejudiced as a result. Finally, Romero argues that the $3,052,158.40 amount of restitution constitutes an excessive fine in violation of her constitutional rights. We begin with the jurisdictional challenge.

### I. Jurisdiction

Penal Code section 1203.3, subdivision (a) authorizes courts "at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence." As the California Supreme Court has explained, " 'the statute itself furnishes the measure of

---

[6] The return includes a declaration from Officer Marcus dated June 8, 2022. Romero objects to this declaration in her reply. We decline to consider the declaration, as it purports to state facts related to the merits of Officer Marcus's restitution claim that were not presented to the trial court. (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1096–1097.)

8

the power which may thus be exercised' " and thus " 'the court loses jurisdiction or power to make an order revoking or modifying the order suspending the imposition of sentence or the execution thereof and admitting the defendant to probation after the probationary period has expired.' " (*In re Griffin* (1967) 67 Cal.2d 343, 346.) This jurisdictional principle applies to restitution: "a trial court loses jurisdiction to impose restitution once a probationary term has expired." (*Hilton v. Superior Court* (2014) 239 Cal.App.4th 766, 775.)

The People do not dispute this, but instead contend that Romero is estopped from challenging the court's jurisdiction here because she consented to continuances of the restitution hearing past the completion of her probation. *People v. Ford* (2015) 61 Cal.4th 282 (*Ford*) is instructive on the point. In *Ford*, the defendant was placed on probation that ended in March 2012. (*Id.* at p. 285.) At a restitution hearing in January 2012, the victim testified that she needed more time to gather supplemental documentation. (*Ibid.*) The hearing was continued twice because a defense witness failed to comply with a subpoena. (*Id.* at p. 286.) Then, at the April 2012 hearing, the defendant contested the court's jurisdiction to order restitution because his term of probation had expired. (*Ibid.*) The trial court rejected the argument and awarded restitution. (*Ibid.*) *Ford* concluded that the defendant was estopped from challenging the trial court's jurisdiction. (*Id.* at p. 288.) It explained: "In the circumstances here, where defendant's own requests played a role in delaying the proceedings and defendant did not object to a continuance of the restitution hearing to a date beyond his probationary term, he can be understood to have consented to the continuance." (*Ibid.*)

So too here. The initial restitution hearing was held on August 26, 2016, during Romero's term of probation. The hearing was then continued

four times, each while Romero was still on probation. Additional continuances occurred in late 2017 and early 2018, largely due to the *Pitchess* motion filed by Castillo in July 2017—two months *after* Romero had completed probation. There is nothing in the record to show that Romero objected to any of these continuances. We thus conclude that Romero is estopped from challenging the trial court's jurisdiction to order restitution after her probationary term had expired. (*Ford*, *supra*, 61 Cal.4th at p. 288.)

## II. Ineffective Assistance of Counsel

We turn next to Romero's ineffective assistance of counsel argument.[7] It is well established that to prevail on a claim for ineffective assistance of counsel, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, that is, a reasonable probability that the result of the proceeding would have been different absent the alleged error. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 696 (*Strickland*).)

Romero argues that Castillo was ineffective because he did not object to the trial court making a restitution order after her probation ended, and because he failed to advise her that the trial court would lose jurisdiction to order restitution after May 2017. We agree with part of her argument, finding that Castillo's failure to advise Romero that the trial court would lose jurisdiction to make a restitution order upon the termination of probation falls below an objective standard of reasonableness. We cannot make this finding about Castillo's failure to object to continuing the restitution hearing

---

[7] "Usually, ineffective assistance of counsel claims are properly decided in a habeas corpus proceeding rather than on appeal." (*People v. Carrasco* (2014) 59 Cal.4th 924, 980.) We assume, without deciding, that ineffective assistance of counsel claims are available on mandamus review. The People do not contend otherwise.

beyond the probationary term, as this could have been based on a reasonable tactical decision to allow additional time to investigate Officer Marcus's claims. (See *People v. Contreras* (2009) 177 Cal.App.4th 1296, 1306–1307 [rejecting ineffective assistance of counsel claim based on continuance to obtain clarification on sentencing information].) As to the second prong of the analysis, Romero has not convinced us that Castillo's failure to advise her or object to the continuance of the restitution hearing was prejudicial. In August 2016, while Romero was still on probation, the People introduced evidence in support of Officer Marcus's restitution claim and Castillo had the opportunity to cross-examine Marcus. Even if Romero, aware of her rights, had directed Castillo to object to continuing the restitution hearing to a date after probation had ended, the People could simply have asked the trial court to enter a timely restitution order based on the evidence it had already received.

We are, however, persuaded by Romero's argument that Castillo was ineffective because he failed to investigate and present evidence to support his arguments on restitution. As a preliminary matter, Castillo appears to have misunderstood the burden of proof on victim restitution. "At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss." (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) Once this prima facie showing has been made, " 'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Ibid.*) Here, instead of attempting to satisfy this burden, Castillo merely argued that there was insufficient evidence to support the amount requested.

11

Castillo asserted that Officer Marcus should receive "substantially less" than $4 million dollars but failed to present any alternative amount (or supporting evidence). Castillo failed to raise potentially viable issues, such as whether Officer Marcus was required to mitigate damages by seeking other employment. Here, Officer Marcus testified that he was unable to continue working as a police officer and was "limited to motions below the shoulder." Castillo did not ask the officer if he was able to work at other jobs that could accommodate his physical limitations. Castillo had a duty to "pursue diligently those leads indicating the existence of evidence favorable to the defense." (*In re Neely* (1993) 6 Cal.4th 901, 919.) While it is generally counsel's prerogative to pursue a particular line of inquiry, Castillo's decision not to explore mitigation of damages is unreasonable if based upon inadequate investigation. (*Strickland*, *supra*, 466 U.S. at pp. 690–691 ["[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"].)

"We also examine the reasonableness of the investigation in light of defense counsel's actual strategy." (*In re Lucas* (2004) 33 Cal.4th 682, 725.) Here, Castillo argued that Officer Marcus had "preexisting injuries [that] were not caused by defendant," but did not present any medical records or other evidence. Paine's declaration states that she found records in Castillo's file containing information that would have raised questions regarding Officer Marcus's credibility and the veracity of his claims. Castillo also argued that Officer Marcus's injuries were caused by his own negligence as a police officer, but offered no evidence to support the argument. Instead, Castillo made an unsupported assertion that "[i]nstead of utilizing de-escalation techniques, [Officer Marcus] became upset, put [Romero] in a

wristlock, and dragged her from the car." Based on our review of the record and the declarations of Romero and Paine, we conclude that Castillo's performance in the restitution proceedings fell below an objective standard of reasonableness.

We are also persuaded that absent such errors, there is a reasonable probability that the outcome of the restitution hearing would have been different. (*Strickland*, *supra*, 466 U.S. at p. 696.) Before issuing its order, the trial court noted that Castillo had not provided any alternative amount for restitution, and explicitly lamented the fact that it was not offered a different calculation. The court concluded that the $3,052,158.40 amount was appropriate in light of the evidence (or lack thereof) that had been submitted. These statements support our conclusion that Castillo's inadequate investigation of Officer Marcus's claims, failure to support his arguments with evidence, and failure to specify or support a lower amount of restitution as suggested in his memorandum prejudiced Romero.[8]

In sum, we conclude that Romero received ineffective assistance of counsel in the restitution proceedings.[9]

---

[8] Because we have concluded that Romero received ineffective assistance from Castillo during the restitution proceedings, we do not reach her claim that Castillo's failure to appeal the restitution order also constitutes ineffective assistance of counsel. We note that even if Romero succeeded in proving this claim, it would not yield the relief she seeks in her prayer: to vacate the restitution order and begin the restitution proceedings anew. The remedy for counsel's failure to file a timely notice of appeal is an order directing the trial court to vacate and reenter the restitution order, thus restarting the clock for Romero to file a direct appeal of the restitution order. (See *Manning v. Foster* (9th Cir. 2000) 224 F.3d 1129, 1135.)

[9] Given our conclusion that the restitution order must be reversed because Romero received ineffective assistance of counsel, we do not address her alternative argument that the $3,052,158.40 amount of restitution

## DISPOSITION

The petition for writ of mandate is granted.  Let a peremptory writ of mandate issue, directing respondent court to vacate its June 4, 2018 restitution order and conduct new proceedings on restitution consistent with this opinion.

---

constitutes an excessive fine in violation of Romero's constitutional rights.  It remains open for Romero, on remand, to make this argument or others which challenge the amount of restitution claimed.  Restitution is not intended to provide the victim with a windfall.  (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1176–1178, 1180).

                         _____

                           Mayfield, J.*

We concur:


_____

Richman, Acting P.J.


_____

Miller, J.


*Romero v. Contra Costa County Superior Court* (A162917)


     * Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


15