Filed 7/16/14  Spectrum Info. Services LLC v. Spectrum Info Services NW CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SPECTRUM INFORMATION SERVICES, LLC, et al., <br><br>    Plaintiffs and Appellants, <br><br>         v. <br><br> SPECTRUM INFORMATION SERVICES NW, INC., et al., <br><br>    Defendants and Respondents. | G048565 <br><br> (Super. Ct. No. 30-2012-00586068) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.  Motion for sanctions.  Denied.

The Perry Law Firm, Michael R. Perry, Larry M. Roberts and Michelle A. Hoskinson for Plaintiffs and Appellants.

Karr Tuttle Campbell, J. Dino Vasquez, J. Derek Little and Paul Richard Brown for Defendants and Respondents.

\*          \*          \*

## INTRODUCTION

Spectrum Information Services, LLC (Spectrum LLC), and Curtis Pilon (together referred to as Plaintiffs) appeal from an order granting a motion to quash service of summons for lack of personal jurisdiction. The motion was brought by defendants Spectrum Information Services NW, Inc. (Spectrum NW Inc.), which is a Washington corporation, Glenn Odell, who is a resident of Oregon, and Lisa Lynn Kays, who is a resident of Washington (Spectrum NW Inc., Odell, and Kays are collectively referred to as Defendants).

We conclude none of Defendants has contacts with California sufficient to support the exercise of personal jurisdiction and therefore affirm the order granting the motion to quash. Defendants have brought a motion for sanctions against Plaintiffs on the ground their appeal is frivolous and their appellate briefs violate court rules. Although the appeal is without merit, it is not frivolous, and so we deny the motion for sanctions.

## FACTS AND ALLEGATIONS

## I.

## The Parties

*Plaintiffs:* Spectrum LLC is a California limited liability company and is the successor in interest to Spectrum Information Services Document Management Corporation (Spectrum DMC), a California corporation. Pilon, a California resident, is the president and chief executive officer of Spectrum LLC.

*Defendants:* Spectrum NW Inc. is a Washington Corporation. Odell is an Oregon resident, and Kays is a Washington resident.

Spectrum Information Services Northwest (Spectrum NW Partnership) (not a party to the lawsuit) is a general partnership formed to conduct business in the States of Washington and Oregon.

2

## II.

## Allegations of the First Amended Complaint

The first amended complaint (the Complaint) alleged the following:

Spectrum DMC provided various document and data management services, such as document imaging, scanning, indexing, Web hosting, and programming. Spectrum DMC maintained an office in Santa Ana, California.

In 2004, Pilon, Odell, and Jim Bradford Merriles formed Spectrum NW Partnership to establish a branch of Spectrum DMC in the Pacific Northwest. Spectrum NW Partnership was documented by a partnership agreement (the Partnership Agreement) providing that all revenues, costs, and liabilities would be split equally among the three general partners (Pilon, Odell, and Merriles), all agreements would be made by committee, and any acquisition or expenditure of over $500 would need the unanimous consent of all partners. Although the entity status of Spectrum NW Partnership had not been determined, Pilon, Odell, and Merriles understood and agreed they were, and would continue to be, equal partners and would execute a full partnership agreement.

Spectrum DMC paid for training of the new staff of Spectrum NW Partnership and "provided services for the next five years to answer all questions, help run production, perform set ups, provide IT support, etc." to Spectrum NW Partnership. In addition, Spectrum DMC ran "all post processing" for Spectrum NW Partnership out of Spectrum DMC's office in Santa Ana and provided "email, web hosting and a plethora of other services as well as paid the insurance, the outside programmers' charges and [human resources] Administration." Pilon and Merriles supplied Spectrum NW Partnership with servers, scanners, software, and business contacts and relationships, and Pilon "agreed to share the goodwill name 'Spectrum Information Services,' taken from his business [Spectrum] DMC."

3

As part of the formation of Spectrum NW Partnership, Pilon, Odell, and Merriles agreed they needed additional capital and obtained a line of credit in the amount of $60,000, guaranteed by all three partners. The line of credit required the approval of all partners to borrow against it. From this line of credit, Spectrum NW Partnership borrowed about $10,000 for payroll.

Odell received funds from the line of credit to pay Spectrum NW Partnership's bills, but "failed [to] distribute any proceeds as well as failed to pay for the labor and support from [Spectrum] DMC, which labor and support was in excess of $40,000.00." From the inception of Spectrum NW Partnership, Odell paid himself a salary of $4,000 per month but "has failed to pay the other Partners, and has now failed to report or distribute any profits to the Partners." Neither Pilon nor Merriles ever received a paycheck from Spectrum NW Partnership. It is believed that "Odell siphoned funds out of the [Spectrum NW] Partnership account and moved them into his own personal bank account."

When Spectrum DMC was dissolved in May 2008, Merriles created a new entity while maintaining his ownership interest in Spectrum NW Partnership. Spectrum DMC was succeeded by Spectrum LLC.

In May 2008, Odell created Spectrum NW Inc. as a Washington State S corporation, and "without the knowledge or consent of the other Partners, Odell used Partnership funds, monies, equipment and facilities to start his new venture." Odell converted the assets of Spectrum NW Partnership and transferred all of those assets to Spectrum NW Inc. Pilon made "numerous written and oral requests of Odell to return the stolen funds and make payment for additional services rendered by Spectrum [LLC]." When Odell finally responded, he rejected those requests and stated he had "various investors who had invested approximately $100,000 in [Spectrum NW Inc.] and subsequently were part-owners of the entity."

4

Pilon several times requested Odell and Spectrum NW Inc. to "cease and desist" from using Spectrum LLC's name and to "pay back the joint line of credit which Odell had exhausted on his own." Odell "rebuffed" all the requests, including a demand letter from Pilon's attorney.

Odell convinced Kays, who worked as the controller for Spectrum NW Partnership, to keep two sets of books to conceal his activities. "Such acts and agreement to act together constitute a conspiracy subjecting Defendant Kays to liability for each and every act taken by the conspiracy as though committed by Defendant Kayes [*sic*] herself."

Based on these allegations, the Complaint set forth 13 causes of action: (1) embezzlement (against Defendants); (2) conversion (against Defendants); (3) breach of written contract (by Pilon only against Odell); (4) breach of fiduciary duty (against Defendants); (5) fraud (against Defendants); (6) negligent misrepresentation (against Defendants); (7) unfair business practices (against Defendants); (8) unjust enrichment (against Defendants); (9) misappropriation of trade secrets (against Defendants); (10) misuse of corporate assets (against Spectrum NW Inc.); (11) conspiracy (against Defendants); (12) common law trade name infringement (Spectrum LLC only against Defendants); and (13) breach of the implied covenant of good faith and fair dealing (against Defendants).

## PROCEDURAL HISTORY

Plaintiffs filed the Complaint in August 2012. In October 2012, Defendants filed their motion to quash service of summons. Plaintiffs filed opposition and moved for a continuance to conduct jurisdictional discovery. The trial court issued a tentative ruling that Plaintiffs had failed to meet their burden to establish jurisdiction as to any of Defendants, but granting Plaintiffs' request to conduct jurisdictional discovery "to develop the facts necessary to sustain [their] burden of proof."

5

In February 2013, after conducting jurisdictional discovery, Plaintiffs filed a supplemental opposition to the motion to quash, supported by declarations and discovery responses. Defendants filed supplemental briefing in support of their motion to quash. On April 9, 2013, after hearing oral argument, the trial court issued a minute order granting the motion to quash, explaining at length the factual and legal basis for the ruling. The trial court concluded: "Despite a continuance to conduct discovery, Spectrum Plaintiffs have not met their burden to show that minimum contacts exist between Spectrum Defendants and California to justify imposition of personal jurisdiction. Therefore, Spectrum Defendants' motion to quash service of summons is granted."

Plaintiffs timely filed a notice of appeal. Under Code of Civil Procedure section 904.1, subdivision (a)(3), an appeal may be taken from "an order granting a motion to quash service of summons."

## DISCUSSION

## I.

## Jurisdictional Requirements

California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) Code of Civil Procedure section 410.10 "manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations." (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445.)

The United States Constitution permits a state to exercise jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) "The 'substantial connection . . .' [citations] between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action*

6

*of the defendant purposefully directed toward the forum State.* [Citations.]" (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 112.)

Personal jurisdiction may be either general or specific. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).) A nonresident defendant is subject to the forum's general jurisdiction where the defendant's contacts are "'substantial . . . continuous and systematic.'" (*Ibid.*, quoting *Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445, 446.) In that situation, the cause of action need not be related to the defendant's contacts because "[s]uch a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." (*Vons*, *supra*, at pp. 445, 446.)

If the nonresident defendant does not have substantial and systematic contacts with the forum state, the defendant may be subject to specific jurisdiction if (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy, (2) the controversy is related to or arises out of the defendant's contacts with the forum, and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Vons*, *supra*, 14 Cal.4th at pp. 446, 447.)

## II.

### Burden of Proof and Standard of Review

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.]" (*Vons*, *supra*, 14 Cal.4th at p. 449, see *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090.) The plaintiff must "'present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." [Citation.]'" (*DVI*, *supra*, at pp. 1090-1091.)

7

When the evidence of jurisdictional facts is not in dispute, the issue whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review. (*Vons*, *supra*, 14 Cal.4th at p. 449.) When evidence of jurisdiction is in dispute, we accept the trial court's resolution of factual issues, draw all reasonable inferences in support of the trial court's order, and review the trial court's determination of factual issues for substantial evidence. (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 266-267; *Archdiocese of Milwaukee v. Superior Court* (2003) 112 Cal.App.4th 423, 434-435; *DVI, Inc. v. Superior Court*, *supra*, 104 Cal.App.4th at p. 1091.) "The ultimate question whether jurisdiction is fair and reasonable under all of the circumstances, based on the facts which are undisputed and those resolved by the court in favor of the prevailing party, is a legal determination warranting our independent review." (*Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 585.)

### III.

### General Jurisdiction

Plaintiffs argue they demonstrated Defendants are subject to general jurisdiction in California. In analyzing general jurisdiction, we examine whether each of them has substantial, continuous, and systematic contacts with California. (*Vons*, *supra*, 14 Cal.4th at p. 445.)

A. *Spectrum NW Inc.*

In support of the motion to quash, Defendants presented evidence that Spectrum NW Inc. is a Washington corporation and has never conducted business or advertised for business in California. Plaintiffs presented no evidence that Spectrum NW Inc. has, or ever had, any contacts with California, much less substantial, continuous, and systematic ones. Plaintiffs argue only that the Partnership Agreement is a sufficient basis to assert personal jurisdiction over Defendants. Spectrum NW Inc. was not, however, a party to the Partnership Agreement.

8

B. *Odell*

In support of the motion to quash, Defendants presented evidence that Odell is a resident of Oregon and owns no property in California. From 1993 to 2005, he worked as a regional vice-president for Anacomp, a company headquartered in San Diego, California. From 2005 through 2008, he worked in Enumclaw, Washington, for Spectrum NW Partnership, and since 2008, he has worked in Enumclaw, Washington, for Spectrum NW Inc. Plaintiffs presented no evidence that Odell had substantial, continuous, and systematic contacts with California.

Plaintiffs argue Odell subjected himself to general jurisdiction in California by entering into the Partnership Agreement with two California residents. The seminal case in this area is *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478-479 (*Burger King*), in which the United States Supreme Court rejected the notion that a contract with a party in the forum state in itself justifies the exercise of jurisdiction over an out-of-state resident.[1] In *Burger King*, which Plaintiffs do not cite, the United States Supreme Court stated: "[W]e have emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' [Citation.] It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." (*Id.* at p. 479.)

In *Burger King*, the Supreme Court held that a franchisee, who was a Michigan resident, was subject to jurisdiction in Florida, in which the principal offices of

---

[1] *Burger King* is a specific jurisdiction, rather than a general jurisdiction, case and was based on the purposeful availment requirement. (*Burger King*, *supra*, 471 U.S. at pp. 475-476.) We discuss it here, under general jurisdiction, because it is controlling of Plaintiffs' argument that Odell was subject to *general* jurisdiction in California based on the Partnership Agreement.

9

the franchisor were located.  (*Burger King*, *supra*, 471 U.S. at pp. 463-464.)  The franchisee had no physical ties to Florida whatsoever except that his business partner had attended a brief training course in that state.  (*Id.* at p. 479.)  But the Supreme Court reasoned the franchisee was subject to jurisdiction in Florida because the dispute grew directly out of a contract—the franchise agreement—having "'a *substantial* connection'" with that state.  (*Ibid.*)  The court concluded:  "Eschewing the option of operating an independent local enterprise, [the franchisee] deliberately '[reached] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization.  [Citation.]  Upon approval, he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [the franchisor] in Florida.  In light of [the franchisee's] voluntary acceptance of the long-term and exacting regulation of his business from [the franchisor]'s Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'"  (*Id.* at pp. 479-480.)

Under *Burger King*, Odell did not subject himself to jurisdiction in California by entering into the Partnership Agreement.  The evidence supported a finding the Partnership Agreement was negotiated in Portland, Oregon.  In interrogatory responses, Odell stated:  "The Partnership Agreement for Spectrum [NW Partnership] . . . was negotiated and agreed to in Portland, Oregon in July 2004 as evidenced by travel receipts after a meeting between a potential lessor of facility space, Iron Mountain, and Glenn Odell, Curtis Pilon and Jim Merriles. . . . Some further redline revisions were made to the agreement during the following months and a final draft was circulated via email for signature.  As is reflected on the agreement, Glenn Odell signed on September 4, 2004, Jim Merriles signed on September 8, 2004, and Curtis Pilon signed on September 9, 2004.  The location of the three partners when they separately signed the agreement and circulated it via email is unknown at this time."

10

Pilon declared Odell was present in Orange County, California, for the negotiation and signing of the Partnership Agreement. The fact that Odell's signature on the Partnership Agreement is dated six days earlier than Pilon's signature cuts against that assertion. Also, the Partnership Agreement refers to "today's date" as July 27, 2004, which is consistent with Odell's statement the Partnership Agreement was negotiated in July, not September, 2004.

More importantly, under *Burger King*, the Partnership Agreement and Odell's obligations related to it were to be performed in the State of Washington. The Partnership Agreement states: "This agreement is for the Pacific Northwest territory only and operations in the states of Washington and Oregon only. If at any time there is to be any additional locations between above-mentioned partners an additional agreement will need to be entered into at that time." Under the terms of the Partnership Agreement, Odell worked in Washington for Spectrum NW Partnership from 2005 through 2008.

Plaintiffs argue, without citing *Burger King*, the Partnership Agreement has "substantial connections with California" because Spectrum NW Partnership was an expansion of Spectrum LLC, a California company, was to use Spectrum LLC's goodwill, name, and "relationships," and received services, equipment, staff training, and payroll services from Spectrum LLC. The evidence showed that Spectrum NW Partnership used the Spectrum name, received assets and some technical support from Spectrum DMC, and two of the three partners were California residents. But, as Defendants point out, the Partnership Agreement created a separate and distinct entity, and Spectrum NW Partnership was not merely an expansion of Spectrum DMC. The Partnership Agreement did not have a substantial connection with California, and certainly did not create the "carefully structured 20-year relationship" subject to "long-term and exacting regulation" with "continuing and wide-reaching contacts with [California]," envisaged by *Burger King*, *supra*, 471 U.S. at page 480, as supporting personal jurisdiction.

11

In asserting the Partnership Agreement established general jurisdiction over Odell in California, Plaintiffs rely heavily on two pre-*Burger King* cases: *Ault v. Dinner For Two, Inc.* (1972) 27 Cal.App.3d 145 (*Ault*) and *McGee v. International Life Ins. Co.* (1957) 355 U.S. 220 (*McGee*). In *Ault*, the plaintiff, a California resident, entered into an employment contract with the defendant, a New Jersey corporation that published books of discount tickets. (*Ault*, *supra*, at p. 147.) The contract made the plaintiff the defendant's exclusive representative in California; before that time, the defendant had not conducted business in California. (*Ibid.*) Pursuant to the contract, the plaintiff solicited business for the defendant in California and forwarded orders to the defendant in New Jersey; however, none of the orders was ever completed, and the defendant derived no income from the plaintiff's efforts. (*Ibid.*) The contract was terminated, and the plaintiff sued the defendant in California for breach of contract. (*Id.* at pp. 147-148.)

The trial court granted the defendant's motion to quash service of summons for lack of personal jurisdiction. (*Ault*, *supra*, 27 Cal.App.3d at p. 148.) The Court of Appeal reversed, concluding the defendant was subject to personal jurisdiction in California. Citing *McGee*, the Court of Appeal reasoned: "Here the contract under consideration was to be performed in California. By it, the plaintiff undertook to represent the corporate defendant in California and to sell its product to California restaurant owners. Moreover, the corporation had direct contact with several of these owners—first accepting, and then canceling the orders the plaintiff had taken from them. That the corporate defendant eventually derived no income from the contract is not controlling. The constitutional requirements of due process are met because the suit was based upon a contract which had a substantial connection with this state. [Citations.]" (*Ault*, *supra*, at p. 151.)

The issue in *McGee*, *supra*, 355 U.S. at pages 221-222, was whether California could exercise personal jurisdiction over an insurance company that had assumed a life insurance policy issued to a California resident. The insurance company

12

had no office or agent, and never did business in California. (*Id.* at p. 222.) The United States Supreme Court concluded the exercise of personal jurisdiction over the insurance company comported with due process for these reasons: "The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable." (*Id.* at p. 223.)

Neither *Ault* nor *McGee* helps Plaintiffs. Both opinions focus on the place of performance as determinative of personal jurisdiction. In *Ault*, *supra*, 27 Cal.App.3d at page 151, the court based its ruling on the fact "the contract under consideration was to be performed in California," while in *McGee*, *supra*, 355 U.S. at page 223, the court found a "substantial connection" because "[t]he contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died." Odell worked for Spectrum NW Partnership in Washington and has no substantial connection with California.

C. *Kays*

In support of the motion to quash, Defendants presented evidence that Kays was born in Portland, Oregon, is a Washington resident, and owns no property in California. From 1992 to 2005, she worked as a business manager for Anacomp, a company headquartered in San Diego, California. From 2005 through 2008, she worked in Enumclaw, Washington, as the controller for Spectrum NW Partnership, and since 2008, she has worked in Enumclaw, Washington, as the controller for Spectrum NW Inc. She is not a party to the Partnership Agreement.

13

The only basis for general jurisdiction over Kays, argued by Plaintiffs, is she "is refusing to be bound by her obligations as bookkeeper for the resulting partnership even when her salary was paid for by a California company." There is some question as to the extent to which Kays's salary at Spectrum NW Partnership was paid by Spectrum LLC (or Spectrum DMC). Kays worked, however, for Spectrum NW Partnership in Washington. Plaintiffs cite no authority to support the proposition that general jurisdiction extends to a nonresident with no forum contacts simply because the nonresident's salary earned while working outside the forum was paid by a forum resident. Even if Kays's salary was funded by Spectrum LLC or Spectrum DMC, Kays—who has never resided or owned property in California—did not have contacts with California that were "so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." (*Vons*, *supra*, 14 Cal.4th at p. 446.)

## IV.

## Specific Jurisdiction

A. *Review of Relevant Law*

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation."'" (*Walden v. Fiore* (2014) 571 U.S. __, __ [134 S.Ct. 1115, 1121]; accord, *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).) Three requirements must be met to establish specific jurisdiction:

1. Purposeful availment. "'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.) Purposeful availment asks whether the defendant's "conduct and connection with the

14

forum State are such that he should reasonably anticipate being haled into court there."
(*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.)

2. Substantial Connection. The controversy must relate to or arise out of the defendant's forum contacts. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.) "'The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action *arises out of or has a substantial connection* with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction.'" (*Vons*, *supra*, 14 Cal.4th at p. 448.)

3. Reasonableness. Finally, "'[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice."' [Citation.]" (*Vons*, *supra*, 14 Cal.4th at pp. 447-448.) We do not address whether the exercise of personal jurisdiction would be reasonable because the first two requirements are not satisfied as Spectrum NW Inc., Odell, or Kays.

B. *Spectrum NW Inc.*

1. *Purposeful Availment*

The trial court found, "[t]here is no evidence to show how Defendant Spectrum [NW Inc.] purposefully directed its activities at California with the knowledge that its conduct would cause harm in the state." Plaintiffs neither challenge that finding nor argue that Spectrum NW Inc. purposefully availed itself of benefits of California.

2. *Substantial Connection*

Plaintiffs' only argument in support of jurisdiction over Spectrum NW Inc. is "[Spectrum] NW, Inc.'s contact with California includes being formed by wrongfully utilizing assets from [Spectrum] NW Partnership, utilizing equipment and services from [Spectrum LLC], and becoming indebted to a California resident (Pilon) and a California

15

company ([Spectrum LLC])" and this conduct "is directly related to [Plaintiffs'] claims." In opposition to the motion to quash, Pilon submitted a declaration in which he stated, "[b]ased upon communications with Odell and Kays, I know that Odell utilized funds and resources from [Spectrum] NW [Partnership] to incorporate Defendant [Spectrum] NW, Inc." and that "use of funds was in violation of the [Partnership] Agreement."

The trial court found against Plaintiffs: "Spectrum Plaintiffs allege that Defendant Odell improperly used funds and resources from Spectrum NW [Partnership] to start Defendant Spectrum [NW Inc.]. However, there is no evidence regarding where the funds came from, much less from California. And Spectrum Plaintiffs did not provide any evidence to show what resources Defendant Odell used, much less where they came from." Substantial evidence supported the trial court's findings. Spectrum NW Partnership conducted business only in Oregon and Washington, and assets that Spectrum NW Partnership received from Spectrum LLC were located in those states.

In opposition to the motion to quash, Plaintiffs submitted the declaration of Brian Lipscomb, who worked as the information technology manager for Spectrum DMC from May 2003 through May 2008, and thereafter worked in the same position for Spectrum LLC. Lipscomb declared Spectrum DMC provided "all assets" that Spectrum NW Partnership used in its daily business and, to his declaration attached two lists of assets "deployed" to Spectrum NW Partnership. The lists refer, respectively, to "Portland Assets" and "Seattle Assets." A reasonable inference from this evidence is that the assets Spectrum NW Partnership received from Spectrum DMC were kept in Oregon and Washington, and, therefore, any misappropriation of those assets by Spectrum NW Inc. (or Odell) would have occurred in those states. Thus, even if Spectrum NW Inc. used Spectrum NW Partnership assets, that activity would have no substantial connection with California. Finally, Plaintiffs do not cite to any evidence in the record to support the assertion that Spectrum NW Inc. used equipment or services of Spectrum LLC or that Spectrum NW Inc. "bec[ame] indebted" to Pilon.

16

C. *Odell*

Plaintiffs argue Odell's contacts with California were (1) Odell entered into the Partnership Agreement with two parties who were California residents; (2) he knew that Spectrum NW Partnership and Spectrum NW Inc. received services from Spectrum LLC; (3) he formed Spectrum NW Inc. by wrongfully using funds from Spectrum NW Partnership; and (4) he became "indebted" to Pilon and Spectrum LLC by breaching the Partnership Agreement.

1. *Purposeful Availment*

Plaintiffs argue those four contacts satisfy the purposeful availment requirement. We disagree. As to the first two contacts, the evidence, which we construe in Defendants' favor, showed the Partnership Agreement was negotiated in Portland, Oregon. By arguing that Odell entered into the Partnership Agreement with California residents, Plaintiffs "shift[] the analytical focus from [Odell]'s contacts with the forum to his contacts with [Plaintiffs]." (*Walden v. Fiore*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1124].)

The Partnership Agreement expressly stipulated that Spectrum NW Partnership would conduct business only in Oregon and Washington, and Odell worked for Spectrum NW Partnership in Washington. Odell's actions in Oregon and Washington did not create sufficient contacts with California "simply because he allegedly directed his conduct at plaintiffs whom he knew had [California] connections." (*Walden v. Fiore*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1125].) By entering into the Partnership Agreement and engaging in partnership business, Odell did not "'purposefully and voluntarily direct[] his activities toward [California] so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with [California]." (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.)

Breach of the Partnership Agreement might have caused Pilon and Merriles, both California residents, to suffer harm; however, "knowledge that harm will

17

likely be suffered in the forum state, 'when unaccompanied by other contacts,' is therefore 'too unfocused to justify personal jurisdiction.'" (*Pavlovich*, *supra*, 29 Cal.4th at p. 272; see *Walden v. Fiore*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1125] ["mere injury to a forum resident is not a sufficient connection to the forum"].)

As to the third contact, the trial court found there was no evidence regarding where any misappropriated funds came from or what resources Odell used. The assets that Spectrum NW Partnership received from Spectrum LLC were located in Oregon and Washington, and it is reasonable to infer that any misappropriation of Spectrum NW Partnership assets by Odell would have occurred in those states.

The fourth contact is no contact at all; rather, as Defendants argue, Plaintiffs are "refer[ring] to the judgment debt they hope to obtain in this litigation."

2. *Substantial Connection*

In analyzing specific jurisdiction, we examine the nexus between Odell's contacts in California and ask whether the causes of action against Odell arise out of or are substantially connected to those contacts. (*Vons*, *supra*, 14 Cal.4th at p. 448.) The causes of action against Odell, asserted in the Complaint, include breach of the Partnership Agreement, breach of fiduciary duty arising out of the partnership relationship, fraud, and various tort claims based on alleged misappropriation and wrongful taking of Spectrum NW Partnership assets.

Although Spectrum NW Partnership did have some connection to California, the causes of action alleged against Odell did not arise out of that connection, and Plaintiffs presented no evidence to suggest Odell's alleged wrongdoing took place anywhere other than in Oregon and Washington.[2] The Partnership Agreement stated,

_____

[2] In his declaration, Pilon stated that in January 2009, he "became aware" that Odell had created Spectrum NW Inc. and that Odell and Kays were working with a representative of Wells Fargo Bank in Orange County to set up a line of credit or loan for Spectrum NW Inc. The claims asserted in the Complaint are not related to those activities.

18

"[t]his agreement is for the Pacific Northwest territory only and operations in the states of Washington and Oregon only," and Odell—an Oregon resident—worked for Spectrum NW Partnership in Washington. Any misappropriation of Spectrum NW Partnership assets by Odell, and any conduct by him, which allegedly constituted breach of the Partnership Agreement or breach of fiduciary duty, would have occurred in Oregon or Washington.

## D. *Kays*

Plaintiffs assert Kays's contacts with California were (1) Kays was a bookkeeper for Spectrum LLC, Spectrum NW Partnership, and Spectrum NW, Inc., and her salary was paid by Spectrum LLC; (2) she "refus[ed] to provide financial information to Pilon"; and (3) she became "indebted" to Pilon and Spectrum LLC.

### 1. *Purposeful Availment*

As to the first contact, Plaintiffs argue Kays purposefully availed herself of forum benefits because, as a bookkeeper for the Spectrum entities, she "knew that her payroll came from [Spectrum LLC]." This argument fails for two reasons. First, Kays, a Washington resident, did not voluntarily *direct* her activities toward the forum by *receiving* a salary paid directly or indirectly by a California corporation. It is the defendant's conduct that forms the necessary connection with the forum state that is the basis for personal jurisdiction. (*Walden v. Fiore*, *supra*, 571 U.S. at p. __ [134 S.Ct. at p. 1122].) As the trial court found, "[t]here is no evidence to show how Defendant Kays purposefully directed her activities at California with the knowledge that her conduct would cause harm in the state." By receiving a bookkeeper's salary paid by a California corporation that was not her employer, Kays, a Washington resident, would not expect to be subject to jurisdiction in California and would not have "'clear notice that [she] is subject to suit there.'" (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.)

19

Second, there is a factual dispute as to the extent to which Kays's salary was paid by Spectrum LLC. In discovery responses, Kays stated: "Kays' position as Controller was split between rendering services to the [Spectrum NW] Partnership and to Spectrum [DMC]. [Spectrum ]DMC paid the Partnership for Kays' services as Controller rendered to [Spectrum ]DMC. Kays was not paid by [Spectrum ]DMC for bookkeeping services provided to the Partnership."

2. *Substantial Connection*

The causes of action against Kays, alleged in the Complaint, include embezzlement, conversion, breach of fiduciary duty, fraud, negligent misrepresentation, and conspiracy. With respect to the substantial connection requirement, the trial court found that "Kays' receipt of a salary does not support specific jurisdiction because that has nothing to do with the claims against her." We agree. The Complaint alleged that Odell convinced Kays, who worked as the controller for Spectrum NW Partnership, to keep two sets of books to conceal his activities, and "[s]uch acts and agreement to act together constitute a conspiracy subjecting Defendant Kays to liability for each and every act taken by the conspiracy as though committed by Defendant Kayes [*sic*] herself." Although Plaintiffs assert that Kays's "misconduct" as bookkeeper for Spectrum NW Partnership "is the very root" of their causes of action against her, the source of payment of her salary has no "'*substantial connection*'" to them (*Vons*, *supra*, 14 Cal.4th at p. 448).

As evidentiary support for the second contact ("refusing" to provide financial information to Pilon), Plaintiffs cite the declaration of Pilon, in which he states that "[s]ince January 2009, I have requested documents reflecting the financials of [Spectrum] NW [Partnership] from Defendants Odell and Kays on numerous occasions," but they "kept all financials of [Spectrum] NW [Partnership] from me from 2009 through the present date." Assuming this conduct was in furtherance of the alleged conspiracy, its connection with California is not substantial enough to support jurisdiction. Pilon

20

attached to his declaration, as examples of his requests for financial documents and Kays's responses, printed copies of a few e-mail communications dated between January 10 and March 5, 2009. A fair inference was that Kays was in Washington when she communicated by e-mail because she lived and worked in that state at that time.

The third contact, that Kays became "indebted" to Pilon and Spectrum LLC, is no contact at all because, as Defendants argue, "to the extent [Plaintiffs] refer to the judgment debt they hope to obtain in this litigation, they are alleging a 'substantial connection' that exists of necessity in every complaint for monetary relief against a nonresident."

## MOTION FOR SANCTIONS ON APPEAL

Defendants have brought a motion under California Rules of Court, rule 8.276(a)(1) for an order imposing sanctions against Plaintiffs for pursuing a frivolous appeal. Defendants request sanctions in the amount of $24,355 to compensate them for attorney fees and costs incurred in preparing the respondents' brief and the motion for sanctions. Plaintiffs have submitted opposition to the motion for sanctions.

Code of Civil Procedure section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." The Court of Appeal may impose sanctions for "[t]aking a frivolous appeal or appealing solely to cause delay." (Cal. Rules of Court, rule 8.276(a)(1).) An appeal is frivolous when (1) "it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment" or (2) "it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) The first standard—improper motive—is tested subjectively, while the second standard—indisputably without merit—is tested objectively. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516.)

21

Defendants make five arguments in support of their motion for sanctions: (1) Plaintiffs' argument in support of general jurisdiction was really based on specific jurisdiction; (2) Plaintiffs' discussion of legislative intent is meritless; (3) Plaintiffs ignored the trial court's ruling and tried to create confusion about the various entities; (4) numerous statements in the Plaintiffs' appellate briefs are not supported by the record; and (5) Plaintiffs' appellate briefs were frivolous and violated court rules.

Defendants are correct in several respects. Plaintiffs confuse general with specific jurisdiction by relying on the Partnership Agreement as a sufficient basis for personal jurisdiction in California over Spectrum NW Inc. and Odell. Plaintiffs argue general jurisdiction adamantly and at length even though there is not even a remotely colorable claim of general jurisdiction over any of Defendants. Although Plaintiffs rely on the Partnership Agreement as establishing personal jurisdiction, they do not cite *Burger King*, the seminal case on the issue whether contracting with forum residents subjects an out-of-state resident to jurisdiction in the forum.

In opposition to the motion for sanctions, Plaintiffs argue courts have declined to impose sanctions "where the law at issue is one that is evolving or developed law is absent." The law of general jurisdiction has been settled for decades. (*Vons*, *supra*, 14 Cal.4th at p. 445.) Not by any stretch of the evidence or law does Spectrum NW Inc., Odell, or Kays have substantial, continuous, and systematic contacts with California.

It is also true that Plaintiffs virtually ignore the trial court's extensive findings on both general and specific jurisdiction, and ignore the standard of review, which requires conflicts in the evidence to be resolved, and all reasonable inferences to be drawn, in favor of the trial court's ruling. Plaintiffs exploit the similarities in names of the various entities to create some confusion, and many assertions they make are not supported by the record.

22

Despite all this, we conclude sanctions are not warranted. Although Plaintiffs do make factual assertions without citing to the record, their court rule violations are not pervasive, nor do Plaintiffs' appellate briefs "garishly distort[] the record." (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 559.) The appeal, though unsuccessful, cannot be said to be indisputedly without merit. Plaintiffs could have made a reasonably strong, though ultimately not meritorious, claim of specific jurisdiction against Odell based on *Burger King* by likening the Partnership Agreement with a franchise agreement creating a long-term relationship with Spectrum DMC and Spectrum LLC. The motion for sanctions on appeal is denied.

## DISPOSITION

The order granting the motion to quash service of process is affirmed. Defendants shall recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.

23