Filed 3/13/23  Whispering Oaks RCF Management etc. v. Cincinnati Ins. Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WHISPERING OAKS RCF MANAGEMENT CO. INC. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CINCINNATI INSURANCE COMPANY,<br><br>Defendant and Respondent. | H049906<br>(Santa Clara County<br>Super. Ct. No. 20CV361234) |

This case arises from a dispute over insurance coverage for plaintiffs' property in Missouri.  After plaintiffs filed suit in Santa Clara County Superior Court, defendant—an Ohio-based insurance company—moved to quash service of summons on the ground that it was not subject to the trial court's personal jurisdiction.

The trial court agreed and granted the motion.  Plaintiffs contend on appeal that defendant was subject to the trial court's jurisdiction because it conducts "a large amount of business in California," had "case-specific contacts" with the state, and consented to jurisdiction by making various general appearances.  Defendant disagrees and argues that this case has "absolutely nothing to do with California."

We find plaintiffs' arguments have no merit and we affirm.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

## A.  *The parties and insurance policy*

Defendant and respondent Cincinnati Insurance Company (Cincinnati) is an Ohio-based insurance company incorporated in Fairfield, Ohio.  In 2008, Cincinnati issued a commercial business and property package policy (policy) to Whispering Oaks Residential Care Facility LLC and Whispering Oaks RLF Management Company, Inc. (Whispering Oaks).[1]  The policy covered Whispering Oaks' business property in Wildwood, Missouri from August 2008 through August 2011.

## B.  *The Missouri lawsuit*

In 2014, Whispering Oaks sued Cincinnati in the Circuit Court of Cole County, Missouri, asserting claims for breach of contract and vexatious refusal to pay (Missouri complaint).  Whispering Oaks alleged that Cincinnati had refused to pay under the policy following incidents and resulting losses to the property and business in January and December 2010.  The lawsuit was dismissed in October 2015 for failure to prosecute.

## C.  *The California lawsuit*[2]

In January 2020, Whispering Oaks filed the instant lawsuit in Santa Clara County Superior Court.  The trial court held an initial case management conference in October 2020, but Whispering Oaks failed to appear.  The court then issued an order to show cause for Whispering Oaks' failure to appear and its failure to serve Cincinnati, and set the matter for hearing on March 25, 2021.

---

[1] The named plaintiffs and appellants in this action include Naren Chaganti, who was not a named insured under the policy.  Chaganti is also counsel for Whispering Oaks in this action, and claims to be the principal and sole officer of the Whispering Oaks entities.  In this opinion, we refer to plaintiffs and appellants collectively as "Whispering Oaks," unless otherwise indicated.

[2] We summarize the procedural history of this case in some detail because it is relevant to the arguments Whispering Oaks raises on appeal.

Prior to that hearing date, Whispering Oaks filed a first amended complaint in January 2021. The first amended complaint asserted causes of action against Cincinnati for breach of contract, vexatious refusal to pay, and bad faith breach of the covenant of good faith and fair dealing. The complaint alleged, as the Missouri complaint had, that Cincinnati had refused to pay under the policy following incidents and resulting losses to the property and business in January and December 2010.

### D. Motion to quash and demurrer

On February 5, 2021, Cincinnati filed a motion to quash service of the summons and complaint, appearing specially pursuant to Code of Civil Procedure section 418.10, to object to the court's jurisdiction. Cincinnati argued the court did not have personal jurisdiction over it because Cincinnati did not have the requisite "minimum contacts" with California. Instead, it argued, "everything concerning this action, including the events giving rise to it and all parties involved, relates to Missouri." Specifically, Cincinnati argued that "[t]he named insureds on the policy . . . were Missouri companies who owned property and operated a business in Missouri; the insurance policy at issue in this action was negotiated and contracted between Plaintiffs and [Cincinnati] in Missouri; the underlying incident about which this action is based occurred in Missouri; Plaintiffs filed a lawsuit arising from that incident in a court in Missouri; and perhaps most significant, a Missouri court dismissed that lawsuit **with prejudice** in Missouri."

In support of its motion, Cincinnati requested judicial notice of the Missouri complaint, the dismissal from that case, Cincinnati's corporate records on file with the Ohio Secretary of State, and relevant Missouri statutes.

At the same time it filed the motion to quash, Cincinnati also filed a demurrer to the first amended complaint, pursuant to Code of Civil Procedure section 418.10, subdivision (e), which allows a defendant filing a motion to quash to simultaneously demur to a complaint without it constituting a general appearance. (Code Civ. Proc., § 418.10, subd. (e).) In the demurrer, Cincinnati argued that the complaint failed to state

3

a claim because it had been "ruled on and dismissed" in the Missouri action, and because it was barred by the statute of limitations.

On February 18, 2021, prior to opposing the motion to quash and the demurrer, Whispering Oaks filed a request to vacate the trial court's pending order to show cause, on the ground that its attorney had been "overseas and was unable to travel or otherwise appear due to pandemic-related lockdown." On the same day, Whispering Oaks filed a motion to strike Cincinnati's motion to quash. Whispering Oaks then filed its opposition to Cincinnati's demurrer on March 22, 2021.

### E. Dismissal and set aside

On March 25, 2021, the trial court held the hearing on the order to show cause. Whispering Oaks did not appear, and the court dismissed the action without prejudice via minute order on April 1, 2021. Nevertheless, Whispering Oaks subsequently filed an opposition to Cincinnati's motion to quash on May 20, 2021 "[o]ut of an abundance of caution . . . in case the court denies the motion to strike." The next day, Cincinnati served a proposed order of dismissal on Whispering Oaks. The court entered the order and judgment dismissing the case on May 26, 2021.

On May 28, 2021, Whispering Oaks filed a motion to set aside and vacate the order dismissing the case. After hearing that motion on August 24, 2021, the trial court granted it and set aside the dismissal, and directed Whispering Oaks to prepare and file a proposed order. No such order was filed, though. Cincinnati then re-filed its motion to quash and demurrer "[i]n an abundance of caution" on December 1, 2021.

### F. Oppositions to motion to quash and demurrer

Whispering Oaks filed new oppositions to the motion and demurrer on February 1, 2022. In its opposition to the motion to quash, it argued that Cincinnati had made general appearances in the case because it had sought relief from the court "that can only be granted by a court exercising personal jurisdiction." It further argued that Cincinnati had not timely scheduled a hearing on its motion to quash, and that Whispering Oaks had a

4

pending motion for leave to file a second amended complaint which the trial court should grant.

### G. Hearing and order

The motions were heard on March 1, 2022. The trial court granted Cincinnati's request for judicial notice and granted the motion to quash, ruling that Whispering Oaks had "failed to meet their initial burden to prove, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction, general or specific, over [Cincinnati]."

Specifically, the trial court ruled that "[t]he allegation in the unverified FAC [first amended complaint] at ¶ 3 that Defendant 'has offices or agents and conducts [*sic*] throughout the State of California,' is clearly insufficient as it is not evidence. The only evidence offered by Plaintiffs in opposition to the motion to quash is a declaration from Plaintiff Naren Chaganti (included as part of the opposition rather than separately filed) that simply serves to authenticate three attached exhibits offered in support of Plaintiffs' unsuccessful argument that Defendant made a general appearance in this matter that waived its ability to move to quash. It does not provide any specific evidentiary facts sufficient for the Court to conclude that exercising jurisdiction over Defendant would be appropriate."

In short, the court explained, "none of the actions taken by specially appearing Defendant in this action can be reasonably construed as a general appearance or a waiver of any challenge to jurisdiction."

In addition, "[e]ven if Plaintiffs had met their initial burden (and they clearly have not) Defendant has shown, primarily through the material offered for judicial notice, that the adjudicated and dismissed Missouri lawsuit between the parties upon which this action is based (and largely duplicates) does not provide any basis for concluding that Defendant (a business incorporated in Ohio) is subject to general or personal jurisdiction in California."

5

The court also rejected Whispering Oaks' other arguments, explaining that the reason Cincinnati's initial motion to quash had not been heard was that the case had been dismissed, and that Whispering Oaks had no pending motion for leave to file a second amended complaint because it had never filed such a motion. Because the court granted the motion to quash, it did not reach Cincinnati's other motions. The order granting the motion to quash was entered on March 7, 2022.

Whispering Oaks timely appealed.

## II. DISCUSSION

### A. Applicable law and standard of review

California's long-arm statute authorizes courts to exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).) The statute " 'manifests an intent to exercise the broadest possible jurisdiction,' limited only by constitutional considerations of due process." (*Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 583, quoting *Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445.) A state court's assertion of jurisdiction comports with due process requirements "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons*, *supra*, at p. 444, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) The primary focus of that inquiry is "the defendant's relationship to the forum State." (*Bristol-Myers Squibb Co. v. Superior Court* (2017) __ U.S. __ [2017 U.S. Lexis 3873] [137 S.Ct. 1773, 1779] (*Bristol-Myers*).)

Courts have recognized two types of personal jurisdiction: general and specific. (*Bristol-Myers*, *supra*, __ U.S. at p. __ [2017 U.S. Lexis 3873] [137 S.Ct. at pp. 1779-1780].) "A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and

6

systematic.' " (*Vons*, *supra*, 14 Cal.4th at p. 445, quoting *Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445.) "In such a case, 'it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' " (*Vons*, *supra*, at p. 445, quoting *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147.) "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." (*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court* (2021) __ U.S. __ [2021 U.S. Lexis 1610] [141 S.Ct. 1017, 1024] (*Ford Motor Company*).)

A defendant without such continuous contacts nevertheless may be subject to a court's *specific* jurisdiction if it "has purposefully availed [itself] of forum benefits [citation], the 'controversy is related to or "arises out of" a defendant's contacts with the forum' " (*Vons*, *supra*, 14 Cal.4th at p. 446, quoting *Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414), and " 'the assertion of personal jurisdiction would comport with "fair play and substantial justice." ' " (*Vons*, *supra*, at p. 447.) Specific jurisdiction is thus contingent on the " 'relationship among the defendant, the forum, and the litigation.' " (*Helicopteros*, *supra*, at p. 414.)

" 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich*, *supra*, 29 Cal.4th at p. 269, quoting *United States v. Swiss American Bank, Ltd.* (1st Cir. 2001) 274 F.3d 610, 623.) "Thus, the ' "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts [citations], or of the "unilateral activity of another party or a third person." ' " (*Pavlovich*, *supra*, at p. 269, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 475 (*Burger King*).)

The second prong of the specific jurisdiction analysis inquires whether a plaintiff has established that its claims " 'arise out of or relate to defendant's contacts with the

forum.' " (*Ford Motor Company*, *supra*, __ U.S. at p. __ [2021 U.S. Lexis 1610] [141 S.Ct. at p. 1026], italics omitted.) "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." (*Ibid*.)

Even where such minimum contacts do not exist, a defendant may nevertheless consent to personal jurisdiction or otherwise waive objections to it by making a general appearance. "A general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a).) " ' "A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed." [Citation.] Such participation operates as consent to the court's exercise of jurisdiction in the proceeding. "Unlike jurisdiction of the subject-matter . . . jurisdiction of the person may be conferred by consent of the person, manifested in various ways" including a "general appearance." [Citations.] By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process.' " (*ViaView*, *Inc*. *v*. *Retzlaff* (2016) 1 Cal.App.5th 198, 210 (*ViaView*), quoting *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 7-8.)

When a defendant moves to quash service of process based on lack of personal jurisdiction, " '[t]he plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.' " (*Pavlovich*, *supra*, 29 Cal.4th at p. 273; *Vons*, *supra*, 14 Cal.4th at p. 449.) To satisfy that burden, the plaintiff must provide support with "competent evidence of jurisdictional facts. Allegations in an unverified complaint are insufficient to satisfy this burden of proof." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110 (*Automobile Antitrust Cases*).) "The plaintiff must come forward with affidavits and other competent evidence to carry this burden . . . ."

(*Buchanan v. Soto* (2015) 241 Cal.App.4th 1353, 1362.)  Only when a plaintiff carries that burden does it then shift to the defendant to demonstrate that the court's exercise of personal jurisdiction over it would be unfair or unreasonable.  (*Burger King*, *supra*, 471 U.S. at p. 472; *Vons*, *supra*, at pp. 447-448.)

If there is conflicting evidence, "the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence."  (*Vons*, *supra*, 14 Cal.4th at p. 449.)  Where there is no conflict, "the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record."  (*Ibid*.)  Here, the parties do not identify any factual disputes the trial court was required to resolve.  Accordingly, we conduct an independent review.

### B. Analysis

Whispering Oaks argues that the trial court had personal jurisdiction over Cincinnati in multiple ways.  First, it argues Cincinnati is subject to the court's general jurisdiction because it is "at home" in the state by virtue of conducting "a large amount of business in California."  Second, it contends Cincinnati is subject to the court's specific jurisdiction through "case-specific contacts with California," consisting chiefly of communications with Chaganti—who was physically in California—regarding the insurance coverage.  And third, Whispering Oaks argues Cincinnati has consented or waived objections to jurisdiction by making general appearances or arguing the merits throughout the litigation, and by failing to schedule the hearing on its motion to quash within 30 days of filing it.  Whispering Oaks also argues that the trial court erred by not granting leave to file a second amended complaint and not permitting jurisdictional discovery.

Cincinnati argues that it did not consent or waive objections to jurisdiction and did not have the requisite minimum contacts to establish general or specific jurisdiction.

As we explain below, Whispering Oaks' arguments lack merit. Cincinnati was not subject to the trial court's personal jurisdiction and the motion to quash was properly granted.

### 1. *General jurisdiction*

Whispering Oaks claims Cincinnati is subject to the trial court's general jurisdiction by virtue of being "at home" in California. According to Whispering Oaks, "Cincinnati conducts a large amount of business in California and is essentially at home in California. The extent of its contacts with the forum state are to be further developed, and the trial court erred in not granting leave to conduct jurisdictional discovery."

Elsewhere, it asserts that "Cincinnati is licensed for multiple lines of insurance business in California. It also maintains an agent for service of process. It conducts many millions of dollars worth of business in California. Attached to Plaintiffs' request for judicial notice was a set of documents showing Cincinnati's contacts and range of businesses in California. [¶] Cincinnati's wide-ranging business activities in California 'take the place of physical presence in [California].' "

These assertions are entirely unsupported by any citations to the record and we deem them forfeited. (*Meridian Financial Services*, *Inc*. *v*. *Phan* (2021) 67 Cal.App.5th 657, 684 (*Meridian*) [appellant must provide citations to record directing court to evidence supporting each factual assertion].)

Even if we were to consider these arguments, they would fail. There does not appear to be any evidence in the record showing that Cincinnati's contacts with California are " 'substantial . . . continuous and systematic,' " or even showing that Cincinnati regularly conducts business in California. (*Vons*, *supra*, 14 Cal.4th at p. 445.) The first amended complaint includes an allegation that Cincinnati "has offices or agents and conducts throughout the state of California [*sic*]." That vague allegation by itself is insufficient to establish that Cincinnati has been carrying on continuous and systematic contacts with California. A plaintiff "must do more than merely allege jurisdictional

10

facts." (*Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at p. 110.)  A plaintiff must also present evidence in the form of affidavits and other authenticated documents, and "[a]llegations in an unverified complaint are insufficient to satisfy this burden of proof." (*Ibid*., citing *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540; *Automobile Antitrust Cases*, *supra*, at p. 110 ["Declarations cannot be mere vague assertions of ultimate facts, but must offer specific evidentiary facts permitting a court to form an independent conclusion on the issue of jurisdiction."].)

Having identified no evidence in support of its argument that Cincinnati is subject to the general jurisdiction of the trial court, Whispering Oaks has failed to carry its burden.  (*Pavlovich*, *supra*, 29 Cal.4th at p. 273; *Vons*, *supra*, 14 Cal.4th at p. 449.)

### 2. *Specific jurisdiction*

Whispering Oaks argues that Cincinnati had the following "case-specific contacts" in California sufficient to establish personal jurisdiction:  (1) shortly after the January 2010 incident at Whispering Oaks' property in Missouri, Cincinnati's insurance adjuster contacted Chaganti, who was in California at the time, to ask permission to inspect the property; (2) in February 2010, the adjuster once again contacted Chaganti, who was still in California, regarding the insurance policy; and (3) in 2018, Cincinnati sent policy-related documents to California, and communicated with individuals in California, in response to a subpoena issued by a third party in a different lawsuit.

According to Whispering Oaks, these communications "were aimed at a distinct California focus, about a California subpoena, about California residents (Plaintiffs) and the subject insurance policy," and therefore established personal jurisdiction over Cincinnati.

We disagree.  As set forth above, a defendant has the requisite minimum contacts where it has purposefully availed itself of forum benefits *and* the controversy is related to, or arises out of, the defendant's contacts with the forum state.  (*Vons*, *supra*, 14 Cal.4th at p. 446.)

11

We begin with the second of those requirements, which, by itself, defeats Whispering Oaks' contentions. As a threshold matter, Whispering Oaks does not even argue that the controversy is related to, or arose from, Cincinnati's contacts with California. Instead, it argues only that Cincinnati's communications were "aimed at," or "about" California, California residents and the policy. Even if that were true, though, it has nothing to do with whether the controversy at issue here *arose from* or *relates to* Cincinnati's contacts with California. Whispering Oaks has therefore forfeited any such argument. (*Meridian*, *supra*, 67 Cal.App.5th at p. 684.) We are not required to develop a party's arguments or scour the record for supporting evidence and we may treat undeveloped arguments as forfeited. (*Ibid*., citing *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011.)

Even if we were to construe Whispering Oaks' brief as having made the argument, it would have no merit. The controversy at issue here consists of the incidents that occurred at Whispering Oaks' property *in Missouri*; the coverage of the policy, which was negotiated and signed *in Missouri*, and issued by an *Ohio-based* company; and Cincinnati's decision to deny coverage. Whatever contacts or communications Cincinnati may have had with California, there is no evidence in the record that the controversy between the parties arose from, or relates to, such contacts. The mere fact that Chaganti was present in California when Cincinnati communicated with him regarding the incidents and policy coverage does not mean the controversy arose from those contacts.

We need not address Whispering Oaks' arguments that Cincinnati purposefully availed itself of the benefits of the forum state because the test is conjunctive—that is, a plaintiff must establish both purposeful availment *and* that the controversy arose from or relates to the defendant's contacts with the forum. (*Vons*, *supra*, 14 Cal.4th at p. 446; *Burger King*, *supra*, 471 U.S. at pp. 472-473.)

12

Cincinnati did not have the requisite minimum contacts to be subject to the specific jurisdiction of the trial court.

### C. Consent or waiver

Whispering Oaks argues that Cincinnati consented or waived objections to personal jurisdiction in numerous ways, mainly by making general appearances in the litigation, or otherwise "arguing the merits." We address these arguments in turn and explain why they fail.

#### 1. Code of Civil Procedure section 1014

Whispering Oaks claims Cincinnati generally appeared in the case when its attorney e-mailed Whispering Oaks' attorney on January 28, 2021, stating "that they appeared on behalf of their client," and threatening sanctions. According to Whispering Oaks, the e-mail was a "written notice of appearance" that constituted a general appearance pursuant to Code of Civil Procedure section 1014.

Whispering Oaks mischaracterizes the facts and the law. In the e-mail, Cincinnati's attorney did not state that she "appeared on behalf of their client." Instead, she explained that Cincinnati intended to file a motion to quash based on lack of personal jurisdiction, as well as a demurrer on various grounds and a motion to dismiss for forum nonconveniens, and she requested that Whispering Oaks dismiss the suit and pursue any relief to which it believes it is entitled in Missouri. The e-mail says nothing about making an appearance of any kind.

Nor does the e-mail constitute a general appearance pursuant to Code of Civil Procedure section 1014. That section sets forth a list of acts constituting an "appearance," and provides: "A defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant." (Code Civ. Proc., § 1014.) That list is not exclusive, but " 'rather the

13

term may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person.' " (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147.) The determinative factor is "whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed." (*Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397; see also *ViaView*, *supra*, 1 Cal.App.5th at p. 210 [" ' "[a] general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed" ' "].)

Cincinnati's attorney's letter did not recognize the authority of the court to proceed; in fact, it did precisely the opposite by communicating her intent to file a motion to quash based on "lack of jurisdiction," in which "[w]e will argue that the court should quash the service of summons and dismiss the case in its entirety based on the underlying facts and location of the loss, the lack of contacts the insured business plaintiffs had, or have, to the state of California, the plaintiff's domicile at the time of negotiating the contract and the time of loss, and the location of all critical witnesses."

Whispering Oaks does not cite any authority for the proposition that reference to sanctions pursuant to Code of Civil Procedure sections 128.5 and 128.7 constitutes a general appearance. It argues that the threat of sanctions constitutes a general appearance because it "gave Plaintiffs a reasonable expectation that Cincinnati would defend the suit to the end on the merits and then seek sanctions." That mischaracterizes the facts again. In the e-mail, Cincinnati's attorney stated: "We will also request that the court award attorneys' fees to Cincinnati Insurance Company for being compelled to defend this action in California. (C.C.P. §§ 128.5 and 128.7.) We will argue that any claim that this action should be tried in a California court is completely without merit . . . ." The e-mail thus expressly based the possibility of sanctions on the court's *lack of personal jurisdiction* over it, not on Cincinnati's intent to "defend the suit to the end on the merits."

The letter did not constitute a written notice of appearance for purposes of consenting to the trial court's personal jurisdiction.

### 2. *Re-filing the motion to quash*

Whispering Oaks next argues that, by filing a "second motion to quash" on December 1, 2021, roughly 10 months after having filed the initial demurrer on February 5, 2021, Cincinnati waived its right to challenge personal jurisdiction because Code of Civil Procedure section 418.10, subdivision (e), requires that a motion to quash be filed simultaneously with a demurrer to preserve the right to challenge jurisdiction.

As summarized above in the factual and procedural background, the trial court initially dismissed the action on April 1, 2021, but later set aside and vacated the dismissal on August 24, 2021.  On December 1, 2021, Cincinnati re-filed its motion to quash and demurrer.  As Cincinnati explained at the time, it re-filed the motions "[i]n an abundance of caution," because:  "[Cincinnati] filed a motion to quash in this action on February 5, 2021, but that motion was taken off calendar when the action was dismissed in May.  Plaintiffs were successful in their motion to vacate that dismissal, but have yet to successfully file a Proposed Order pursuant to the Court's instructions in its August minute order, and the tentative ruling on the motion to vacate indicated that a Case Management Conference would be set.  In an abundance of caution, Cincinnati Insurance Company refiles this motion to quash."

Whispering Oaks' argument is essentially that the trial court's April 1, 2021 order dismissing the action, and its subsequent August 24, 2021 order setting aside the dismissal, had the combined effect of voiding Cincinnati's initial motion to quash, but not its initial demurrer.  Accordingly, the initial demurrer remained on calendar and was converted retroactively into a general appearance, even though Cincinnati had filed its initial motion to quash simultaneously.  There is no basis for construing the trial court proceedings in that manner and Whispering Oaks has not cited any authority for it.

15

Whispering Oaks cites *Factor Health Management v. Superior Court* (2005) 132 Cal.App.4th 246 (*Factor Health*), for the proposition that Code of Civil Procedure section 418.10, subdivision (e)(1) "does not mean that a defendant may take action which constitutes a general appearance and then negate the effect of that action by a subsequent motion to quash." That general proposition is true. However, in *Factor Health*, the defendants had sought discovery in opposition to a preliminary injunction, prior to filing a motion to quash. (*Factor Health*, *supra*, 132 Cal.App.4th 246.) The court held that the discovery constituted a general appearance; for that reason, the motion to quash was late under Code of Civil Procedure section 418.10, subdivision (e). (*Factor Health*, *supra*, at pp. 251-252.) By contrast here, Cincinnati did not make a general appearance prior to filing its motion to quash.

The record amply demonstrates that Cincinnati re-filed its motion to quash in December 2021 "[i]n an abundance of caution" because Whispering Oaks had not submitted a proposed order following the trial court's setting aside the dismissal. Whispering Oaks' attempt to treat that precautionary step as a waiver of personal jurisdiction is unavailing.[3]

### 3. Failure to schedule a hearing within 30 days

Whispering Oaks argues that Cincinnati waived any challenge to personal jurisdiction by failing to schedule a hearing on its motion to quash within 30 days of filing it. It relies on the language in Code of Civil Procedure section 418.10, subdivision (b), which provides that "[t]he notice shall designate, as the time for making the motion, a date not more than 30 days after filing of the notice." (Code Civ. Proc., § 418.10, subd. (b).) According to Whispering Oaks, the " 'shall' in the statute means

---

[3] Whispering Oaks also argues that the "second motion to quash" was "void" because the Code of Civil Procedure does not authorize the filing of a second motion. The argument fails for the same reason. Cincinnati's re-filing of its motion to quash cannot be construed as filing a "second motion to quash."

16

that a defendant that files a Section 418.10(a) motion to quash cannot sit on his hands; he must schedule a hearing in 30 days or the challenge to personal jurisdiction is waived."

That is not the law. Despite the statute's use of the word "shall," courts have not construed Code of Civil Procedure section 418.10, subdivision (b), to impose a mandatory requirement that a hearing be noticed or held within 30 days. In *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286 (*Olinick*), for instance, the defendant filed the notice of its motion to stay or dismiss based on inconvenient forum, pursuant to Code of Civil Procedure section 418.10, subdivision (a), on May 4, 2004. (*Olinick*, *supra*, at p. 1295.) It then designated a hearing date of July 1, and the parties later stipulated to move the date to July 21, which the trial court approved. (*Ibid*.) The Court of Appeal rejected the plaintiff's arguments that a mandatory 30-day timeline governs the motion and that "by failing to designate a hearing date within the 30-day period, [defendant] waived its right to bring the motion under [Code of Civil Procedure] section 418.10." (*Id*. at p. 1296.)

The Court of Appeal noted that subdivision (a) of the statute provides that " '[a] defendant, on or before the last day of his or her time to plead *or within any further time that the court may for good cause allow*, may serve and file a notice of motion . . . .' " (*Olinick*, *supra*, 138 Cal.App.4th at p. 1296, quoting Code Civ. Proc., § 418.10, subd. (a).) It explained that, "the statute reflects the trial court is authorized to extend the time for filing such a motion" (*Olinick*, *supra*, at p. 1296), and cited with approval treatise language stating that " '[s]cheduling a hearing date *beyond* 30 days should not invalidate a motion to quash. Nothing in [Code of Civil Procedure section] 418.10 suggests the court must overlook the lack of personal jurisdiction or proper service because of a defendant's failure to schedule a hearing date within 30 days.' " (*Ibid.*, quoting Weil & Brown, Cal. Practice Guide: Civ. Proc. Before Trial (The Rutter Group 2005) ¶ 3:381.) The court therefore rejected the argument that a "tardy hearing date on a

17

motion to stay or dismiss under section 418.10 deprives the trial court of jurisdiction to consider the merits of the motion." (*Olinick*, *supra*, at p. 1296.)

Similarly, in *Preciado v. Freightliner Custom Chassis Corp.* (2023) 87 Cal.App.5th 964, the Court of Appeal rejected the same argument in the context of a motion to quash that was noticed for hearing 99 days after filing because that was the first available court date. (*Id.* at p. 972.) Citing *Olinick*, the court held that " 'a tardy hearing date on a motion . . . under [Code of Civil Procedure] section 418.10' does not 'deprive[] the trial court of jurisdiction to consider the merits of the motion.' " (*Id.* at p. 969, fn. 4, quoting *Olinick*, *supra*, 138 Cal.App.4th at p. 1296; Edmon & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 3:381 ["scheduling a hearing date *beyond* 30 days does not invalidate the motion"].)

Whispering Oaks argues that the language in *Olinick* is dicta. We disagree. " 'Dicta consists of observations and statements unnecessary to the appellate court's resolution of the case.' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1158, quoting *Garfield Medical Center v. Belshé* (1998) 68 Cal.App.4th 798, 806.) By contrast, "[s]tatements by appellate courts 'responsive to the issues raised on appeal and . . . intended to guide the parties and the trial court in resolving the matter following . . . remand' are not dicta." (*Sonic-Calabasas*, *supra*, at p. 1158.) In *Olinick*, the plaintiff expressly argued on appeal that the defendant had waived its right to bring the motion under Code of Civil Procedure section 418.10 because it had not designated the hearing within 30 days of filing. (*Olinick*, *supra*, 138 Cal.App.4th at p. 1296.) The Court of Appeal's statements regarding the statute were directly responsive to the issue raised on appeal by the plaintiff.

Whispering Oaks also relies on *Sabato v. Brooks* (2015) 242 Cal.App.4th 715 in support of its position. In that case, the court stated that the defendant's "papers failed to designate a date as the time for making the motion as required by Code of Civil Procedure section 418.10, subdivision (b). Thus, defendant failed to move to quash in

18

compliance with Code of Civil Procedure section 418.10, and, as a result, he waived, among other things, the issue of lack of personal jurisdiction." (*Id*. at p. 723.) However, while the court held that the defendant's failure to designate a hearing date in that particular case constituted waiver, it did not hold that the language in the statute is mandatory in all cases such that the trial court has no jurisdiction to hear the motion after 30 days.

### 4. *Arguing the merits*

Whispering Oaks argues that Cincinnati waived its objections to personal jurisdiction by "arguing the merits" while its motion to quash was pending. Whispering Oaks identifies roughly seven different acts by Cincinnati which it contends constituted a general appearance, thereby waiving any objections to personal jurisdiction, notwithstanding its pending motion to quash.

We reject the contention. It is well settled that "under [Code of Civil Procedure] section 418.10, subdivision (e), a party who moves to quash may—concurrently with or after filing a motion to quash—participate in the litigation and 'no act' by the party constitutes an appearance unless and until the proceedings on the motion to quash are finally decided adversely to that party." (*ViaView*, *supra*, 1 Cal.App.5th at p. 204, citing Code Civ. Proc., § 418.10, subd. (e); *Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 425-427.)

In *ViaView*, the defendant filed a motion to quash in addition to other motions concurrently with, or after, he filed the motion to quash. (*ViaView*, *supra*, 1 Cal.App.5th 198.) After the trial court concluded the defendant had made a general appearance by participating in the litigation "beyond filing the motion to quash," the Court of Appeal reversed the denial of the motion. (*ViaView*, *supra*, 1 Cal.App.5th at p. 204.) It explained that, although Code of Civil Procedure section 418.10, subdivision (e), " 'does not change the essential rule that "[a] defendant submits to the court's jurisdiction by making a general appearance in an action" by "participat[ing] in the action in a manner

19

which recognizes the court's jurisdiction" ' " (*ViaView*, *supra*, at p. 211, quoting *Factor Health*, *supra*, 132 Cal.App.4th at p. 250), it does delay " 'the effect of such actions until the motion to quash is denied . . . .' " (*ViaView*, *supra*, at p. 211, quoting *State Farm General Ins. Co. v. JT's Frames*, *Inc.* (2010) 181 Cal.App.4th 429, 441.)

Whispering Oaks ignores this law. Its discussion of instances where Cincinnati allegedly "argued the merits" is immaterial because the motion to quash was already pending. For the same reason, the case law Whispering Oaks relies on is inapposite, as it either dealt with general appearances made *before* a motion to quash had been filed, or pre-dated the Legislature's enactment of Code of Civil Procedure section 418.10, subdivision (e), in 2002. (Stats. 2002, ch. 69, § 1.)

In its reply brief, Whispering Oaks claims that the relevant portion of *ViaView* is no longer good law following the California Supreme Court's decision in *Stancil v. Superior Court* (2021) 11 Cal.5th 381. We do not read *Stancil* that way. Instead, that case considered whether a defendant may use a motion to quash service of summons to challenge a complaint on the ground that it fails to state a cause of action for unlawful detainer. (*Ibid.*) The court held that a "defendant may contest personal jurisdiction where the five-day summons specific to unlawful detainer actions is not supported by a complaint for unlawful detainer." (*Id*. at p. 390.) It added that such unusual instances will "arise only where the summons is served alongside a complaint for a completely different cause of action (e.g., breach of contract) or a complaint that fails to allege the allegations necessary to assert the defendant is guilty of unlawful detainer . . . ." (*Ibid.*) While a defendant may use a motion to quash in such limited circumstances, "no defendant may use a motion to quash service of summons as a means of disputing the merits of the unlawful detainer complaint's allegations or to argue the plaintiff failed to comply with the pleading requirements specific to unlawful detainer actions." (*Id*. at p. 391.) The case did not address *ViaView*, which remains good law on the point discussed above.

### 5. *Insurance Code section 1602*

Whispering Oaks argues that the trial court has personal jurisdiction over Cincinnati pursuant to Insurance Code section 1602. That section states that "[a]ny notice provided by law or by a policy, and any proof of loss, summons or other process may be served on such agent in any action or other legal proceeding against the insurer, and such service gives jurisdiction over the person of such insurer." (Ins. Code, § 1602.) According to Whispering Oaks, because Cincinnati operates in, and has an agent for service of process in California, service of the summons to that agent operated as consent to personal jurisdiction in this case.

Cincinnati argues that courts "have consistently limited the exercise of jurisdiction over a foreign insurer in connection with construing the scope of the statute." They contend that the designation of an agent for service of process is insufficient to establish jurisdiction, "except for lawsuits arising out of the foreign corporation's business conducted in the state," citing *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1095, and *Gray Line Tours v. Reynolds Electrical & Engineering* Co. (1987) 193 Cal.App.3d 190. In *DVI*, the court held that "a parent company's ownership or control of a subsidiary corporation does not, without more, subject the parent corporation to the jurisdiction of the state where the subsidiary does business." (*DVI*, *supra*, at p. 1087.) In reaching that holding, the court rejected the plaintiff's argument that the defendant was subject to jurisdiction in California simply because it maintained an agent for service of process. (*Id.* at p. 1095.) It then cited *Gray Line* with approval, noting its holding that "designation of an agent for service of process and qualification to do business in California alone are insufficient to permit general jurisdiction except for lawsuits arising out of the foreign corporation's business conducted in the state." (*Ibid.*)

In its reply brief, Whispering Oaks seeks to distinguish *DVI* and *Gray Line* on the grounds that the businesses involved were not insurance companies, so Insurance Code section 1602 was not at issue.

21

We do not read Insurance Code section 1602 as conferring personal jurisdiction over insurance companies merely through service on their registered agents, independent of whether the companies otherwise have the requisite minimum contacts with California. Whispering Oaks has not identified any authority supporting its interpretation of Insurance Code section 1602, and we are not aware of any. That construction of the statute would also be at odds with the well-established rule that "a corporation typically is subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business." (*Pitt v. Metro. Tower Life Ins. Co.* (N.D. Cal. 2020) 2020 U.S. Dist. Lexis 58352, at p. *22, citing *Daimler AG v. Bauman* (2014) 571 U.S. 117, 136.)

The trial court did not have personal jurisdiction over Cincinnati by virtue of Insurance Code section 1602.

### D. Whispering Oaks' other arguments are without merit

#### 1. Leave to file a second amended complaint

Whispering Oaks argues that the trial court erred in not granting leave to file a second amended complaint because "the amended complaint cures any defects in overcoming Plaintiff's burden to prove personal jurisdiction."

However, Whispering Oaks never actually filed a motion for leave to file a second amended complaint. It initially attempted to file a second amended complaint on February 10, 2021, but the clerk rejected it because Whispering Oaks did not have leave of court. Later, when Whispering Oaks filed its opposition to Cincinnati's demurrer on March 22, 2021, it included a paragraph in the opposition labeled "Request for leave to file a second amended complaint," and also included a proposed second amended complaint as an exhibit to Chaganti's declaration.

As the trial court explained in its order granting the motion to quash, "[t]o the extent Plaintiffs may be referring to a 'request' for leave to amend inserted into their

22

March 22, 2021 opposition to Defendant's prior demurrer . . . this in no way constituted a noticed motion for leave to file a second amended complaint and Plaintiffs' counsel could not reasonably believe otherwise. Again, at no point following the filing of the FAC [first amended complaint] have Plaintiffs filed a noticed motion for leave to file a second amended complaint."

We agree with the trial court. Whispering Oaks did not file a noticed motion for leave to file a second amended complaint—it is immaterial whether the trial court should have granted such a hypothetical motion.

Whispering Oaks also argues that the trial court erred in not treating the proposed second amended complaint as an affidavit "for the purpose of establishing personal jurisdiction." It notes that "a properly verified complaint may be treated as a declaration" setting forth jurisdictional facts "permitting a court to form an independent conclusion on the issue of jurisdiction." (*Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at pp. 110-111.) The same problem remains, though—the proposed second amended complaint was not a properly verified complaint because it was never filed.

### 2. *Jurisdictional discovery*

Whispering Oaks argues that the trial court erred by not permitting jurisdictional discovery. It claims the trial court ignored its request for leave to conduct such discovery, and the court should have continued the hearing to allow it.

However, as Cincinnati points out, there is no evidence the trial court ever precluded Whispering Oaks from conducting discovery. Whispering Oaks therefore cannot contend that the trial court erred by not permitting such discovery.

Its arguments that the trial court erred by "ignoring" its requests for leave to conduct discovery and to continue the hearing are equally unavailing. First, jurisdictional discovery is permitted in the context of a motion to quash. (*Roy v. Superior Court* (2005) 127 Cal.App.4th 337, 345, fn. 9.) Whispering Oaks did not need leave of court to conduct it. Second, the hearing Whispering Oaks sought to continue was canceled when

23

the court ordered the case dismissed at which point there was no longer a hearing to continue. And third, Whispering Oaks essentially received a continuance. The hearing it sought to continue was initially scheduled for June 15, 2021, but did not take place until March 22, 2022, following the trial court's orders dismissing the action and later setting aside the dismissal. Whispering Oaks argues that "[n]ot giving a chance to conduct jurisdictional discovery and continue is reversible error." But it fails to demonstrate that it did not have that chance and could not have conducted its discovery during that time period.

### III.  DISPOSITION

The order granting the motion to quash is affirmed. Cincinnati Insurance Company may recover its costs on appeal.

_____
                    Wilson, J.


WE CONCUR:


_____
         Danner, Acting P.J.


_____
         Lie, J.


Whispering Oaks RCF Management Co. Inc. et al. v. Cincinnati Insurance Company
H049906